# Richmond

## Seabert Howard Harmon v. Commonwealth of Virginia.

November 29, 1971.

Record No. 7694.

Present, All the Justices.

*Stuart B. Campbell; Thomas G. Hodges,* for plaintiff in error.

*William P. Robinson, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

I'Anson, J., delivered the opinion of the court.

Seabert Howard Harmon, defendant, was found guilty of second degree murder by a jury and his punishment fixed at 20 years in the State penitentiary. He was sentenced in accordance with the jury's verdict and is here on a writ of error to the judgment.

Defendant contends that the trial court erred (1) in overruling defendant's motion to quash the writs of *venire facias;* and (2) in admitting into evidence the particulars of defendant's prior felony conviction and evidence as to another unrelated crime.

The questions raised by defendant's assignments of error do not require a full statement of the evidence. Suffice it to say that the evidence shows that on the afternoon of April 21, 1970, defendant shot and killed Wesley Edward Spence at or near the intersection of West Main Street and North Sixth Street, in the Town of Wytheville. Lt. Robert Sult, of the Wytheville Police Department, and several other persons witnessed the shooting and testified in the case.

Before defendant was arraigned on the indictment, his counsel moved to quash the writs of *venire facias* for errors of law apparent on the face of the writs. The motion was overruled and an exception was noted.

The record shows that two writs of *venire facias* were issued. The first writ was dated July 24, 1970, and ordered the sheriff of Wythe County to summon "_____ persons" from an attached list to serve as jurors in defendant's trial. The sheriff's return indicated that he summoned all 46 persons whose names appeared on the list. A second writ was issued, also dated July 24, 1970, and it ordered the sheriff to summon 30 persons from a list of 36 names. There is no indication of how many, if any, of these persons found on the second list were actually summoned by the sheriff. Seven of the 36 names appearing on the second list were not listed among the 46 found on the first list.

Code § 19.1-196 provides that the writ of *venire facias* issued in a felony case shall command the officer to summon 20 persons qualified to serve as jurors from a list furnished him by the clerk issuing the writ. It further provides that a violation of such procedure would constitute reversible error if a defendant is tried by a jury composed of any such improperly summoned veniremen. Code § 19.1-198 provides that the list from which the 20 veniremen are to be chosen shall contain 24 names drawn by the clerk or his deputy.

For good cause shown, the trial judge in a felony case may order more than 24 names to be drawn and placed on the list and more than 20 persons to be summoned, provided the numbers are specified

and the list or number drawn is not more than four in excess of the number of persons to be summoned. Code § 19.1-199.

We have repeatedly held that the statutory provisions with respect to empaneling juries are mandatory and not directory. *Hall v. Commonwealth*, 80 Va. 555, 561 (1885); *Jones v. Commonwealth*, 100 Va. 842, 846, 41 S.E. 951, 952 (1902); *Slater v. Commonwealth*, 182 Va. 579, 582, 29 S.E.2d 853, 854 (1944).

Clearly, in the instant case the statutory provisions which govern the summoning of a jury were not followed. The first writ of *venire facias* indicated no number of prospective jurors to be summoned from the list of 46 names. The second writ ordered the sheriff to summon ten persons more than the statute prescribes from a list containing 12 names in excess of the statutory number, and the difference between the number to be summoned and the number listed was greater than the statutory four. There is no order in the record before us showing good cause for drawing and summoning the number of jurors shown on the two writs of *venire facias*.

The verdict of the jury summoned by such irregular writs is not saved by Code § 19.1-201. This statute provides in part that no irregularity in any writ of *venire facias* in the drawing, summoning, or empaneling of jurors shall be cause for setting aside a verdict of the jury unless it appears that such irregularity, error, or failure was intentional, or such will probably cause injustice to the Commonwealth or to the accused. In *Patrick v. Commonwealth*, 115 Va. 933, 938, 78 S.E. 628, 630 (1913), we held that the issuance of writs of *venire facias* different from what the law prescribes is an intentional irregularity and not within the curative provisions of the statute.

We hold that the trial court erred in not quashing the writs of *venire facias*.

Defendant next says the trial court erred in allowing the Commonwealth, on cross-examination of the defendant, to develop particulars of his previous felony conviction.

Defendant's contention raises the permissible scope of the prosecution's cross-examination after defendant has voluntarily opened up by his own testimony the fact that he had been "convicted of a killing" and another related matter.

The record shows that defendant's own counsel, on direct examination, asked defendant if he had been "convicted once of killing," and he replied in the affirmative. Counsel also asked defendant why he did not surrender his pistol to Lt. Sult after the shooting. He replied

that Sult had previously testified against him to something that was not true and that he decided to turn the gun over to some other person who would tell the truth.

On cross-examination, the attorney for the Commonwealth asked defendant if the killing he was convicted of was first degree murder, and defendant replied that it was. In reply to the inquiry as to when Sult had testified untruthfully against him and wherein the testimony was untrue, defendant said it was about twelve years ago when he was granted a new trial on his murder conviction. Defendant said Sult testified in the second trial that he (defendant) told him he was going to kill Guy Martin, and on the second trial he was sentenced to 22 years in prison, two years more than he received on the first trial.

When a defendant voluntarily takes the stand in his own defense and opens up matters by his own testimony, he subjects himself to cross-examination on the matters relevantly raised by that testimony. *Brown* v. *United States*, 356 U.S. 148, 156-57, 78 S.Ct. 622, 627-28, 2 L.Ed.2d 589 (1958); *Harris* v. *Commonwealth*, 129 Va. 751, 753-54, 105 S.E. 541, 542 (1921).

Here defendant obviously believed it would have less impact on the jury if he told them that he had once been convicted of a killing rather than having it brought out on cross-examination. In so doing he opened the door and assumed the risk that the prosecution would ask on cross-examination the degree of the homicide, which was a relevant inquiry under the circumstances here. His attack on the credibility of Lt. Sult, who testified in this and in the previous case, also put in issue some of the details relating to his prior conviction and thus subjected him to cross-examination within limited bounds. The questions asked defendant by the attorney for the Commonwealth were within the legitimate bounds of cross-examination.

■ Since this case must be reversed and remanded for a new trial, and defendant may again take the stand in his own behalf and be questioned concerning his prior conviction of a felony, we deem it advisable to determine the permissible scope of the cross-examination of the defendant under the provisions of Code § 19.1-265, which reads as follows:

> "Conviction of felony or perjury shall not render the convict incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit."

The statute permits the examination of a defendant as to any prior felony convictions, should he become a witness in his own behalf. The sole purpose of such inquiry is to attack the defendant's credibility as a witness. His answer is not to be considered as evidence of his guilt or innocence of the crime charged, and the jury is usually so instructed.

We construe the statute to mean that the fact of conviction of a felony may be shown by the Commonwealth, but the name of the felony, other than perjury, and the details thereof may not be shown. We are not unaware that some prejudice rises against a defendant when it is disclosed that he has been convicted of a felony, but its probative value as to his credit outweighs the prejudicial effect. Should the jury be permitted to know the name of the felony and the details thereof, it may mean more to them than the mere fact that the defendant is a person of doubtful veracity. The danger of such prejudice is increased if the Commonwealth is permitted to show the nature of the crime of which he has been previously convicted. Thus, so long as the defendant answers truthfully the inquiry as to a prior felony conviction, the name of the crime cannot be shown.

Insofar as *Hicks* v. *Commonwealth*, 157 Va. 939, 947, 161 S.E. 919, 921 (1932), permits the Commonwealth to identify the felony of which a defendant has been previously convicted, it is expressly overruled.

■ Lastly, defendant complains of the admission in evidence of a possible violation of the Federal Fire-Arms Control Act, in that he, as a convicted felon, was in possession of a firearm.

Evidence tending to show that an accused has committed another crime independent of, and unconnected with, that for which he is on trial is inadmissible. *Fleenor* v. *Commonwealth*, 200 Va. 270, 274-75, 105 S.E. 2d 160, 163 (1958); *Roy* v. *Commonwealth*, 191 Va. 722, 726, 62 S.E.2d 902, 903 (1951).

The Commonwealth concedes that such evidence was inadmissible, but argues that the error was harmless. We do not agree that the error was harmless, and upon a retrial of the case this evidence should not be admitted.

For the reasons stated, the judgment is reversed and the case is remanded for a new trial.

*Reversed and remanded.*