## Richmond

HAROLD VANN JOHNSON, JR.

V.

COMMONWEALTH OF VIRGINIA

December 3, 1982.

Record No. 811731.

Present: All the Justices.

*William P. Sheffield* for appellant.
*Jacqueline G. Epps, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

In this appeal we again consider the right of a cross-examiner, impeaching the credibility of a witness by proof of prior conviction of a felony, to elicit the name of the felony upon which he relies. Finding that the trial court erred in denying the cross-examiner this right, we reverse.

The defendant, Harold Vann Johnson, Jr., was tried by a jury and convicted of statutory burglary. The Commonwealth proved that the office of a veterinarian in Russell County was entered at night by breaking a window and cutting a screen, and that twenty-four bottles containing pentobarbital were removed by breaking open a locked cabinet. Howard Jake Duty, Jr., gave the

only evidence of criminal agency. He testified that he, along with Johnson and a third man named Ferguson, had participated in the crime in order to steal drugs. Some of the stolen drugs were later found in a closet in Ferguson's bedroom.

Duty was the only witness whose testimony implicated Johnson. Because of this, defense counsel made an extensive attack on his credibility. Duty admitted that he was a drug addict and that he had participated in the crime in order to get "high" by injecting the stolen drugs intravenously. He stated that on the night in question he had smoked five or six marijuana cigarettes and consumed three or four beers. He said that he was "high" at the time and wanted more drugs. He admitted that he had been a drug addict for nine years, since dropping out of high school, and that he had been twice committed to a state hospital for treatment of his addiction. He admitted that he had been convicted of eight prior felonies and that he was facing new charges arising out of the same incident for which Johnson was on trial. He further admitted that he had decided to testify for the Commonwealth after receiving what he called a "no process" on a charge of possession of marijuana.

During this cross-examination, defense counsel asked Duty: "Do you recall being convicted of grand larceny in nineteen —?" The question was interrupted by the Commonwealth's objection. The court stated: "I sustain the objection. You can only ask him what felonies . . . . how many he has been convicted of and not what the felony was."[1]

■. Johnson contends that Duty's testimony was so "overburdened" by matters affecting his credibility that it was unworthy of belief as a matter of law, and that a verdict based upon his uncorroborated testimony should have been set aside. There is no support for this proposition. It is well settled in Virginia that an accused may be convicted upon the uncorroborated testimony of an accomplice. In such a case, however, the court must warn the jury of the danger of basing a conviction upon such uncorrobo-

---

[1] The Commonwealth contends that the defendant failed to state the grounds of his objection to this ruling with reasonable certainty at the time, as required by Rule 5:21. This failure, ordinarily fatal on appeal, was waived here because the trial court, in its ruling, gave clear indication that the nature of the objection was understood, but that the court took an opposite view of the applicable law.

rated testimony. *Dillard* v. *Commonwealth,* 216 Va. 820, 224 S.E.2d 137 (1976).[2]

█ Further, the credibility of witnesses and the weight to be given to their testimony are questions exclusively for the jury. *Coppola* v. *Commonwealth,* 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), *cert. denied,* 444 U.S. 1103 (1980). Here the jury found Duty's testimony believable, despite what it heard affecting its credibility, and based its verdict upon it, as it was entitled to do.

█ The court erred, however, in refusing to permit defense counsel to elicit the names of the felonies of which Duty had been convicted. This case is controlled by *Hummel* v. *Commonwealth,* 217 Va. 548, 231 S.E.2d 216 (1977), and Code § 19.2-269. The jury was entitled to know both the number and the *nature* of Duty's felony convictions, but not the details thereof, in order to evaluate his testimony and determine what credit it should be given. The trial court erroneously applied the rule of *Harmon* v. *Commonwealth,* 212 Va. 442, 185 S.E.2d 48 (1971), which limited such cross-examination to proof that the witness had been convicted of "a felony," without naming it. As we pointed out in *Hummel,* the *Harmon* rule is confined to cases in which a defendant in a criminal case, testifying in his own behalf, is cross-examined as to a prior conviction of a felony.

█ The Commonwealth argues that the trial court's ruling limiting the cross-examination, if error, was harmless beyond a reasonable doubt. Our attention is invited to the numerous factors affecting Duty's credibility, summarized above, which the jury heard. The Commonwealth contends that his credibility had been so thoroughly impeached that naming his felony convictions would have been merely cumulative, adding nothing of substance. We cannot agree. The facts in *Hummel* are strikingly similar to those in the case at bar. There, the Commonwealth's witness, Terry, was an accomplice whose testimony was uncorroborated on those points which implicated the defendant in the crime. Terry testified that he had participated in the crime, that he had been promised immunity in exchange for his testimony, that he had made prior

---

[2] The Commonwealth argues that Duty's testimony was corroborated at other points, not touching on the defendant's involvement, but enough to take his testimony outside the requirement of a cautionary instruction. It is unnecessary to decide whether the corroboration was sufficient, because in this case the court gave the jury an appropriate cautionary instruction.

inconsistent statements, and that he had been convicted of two unrelated felonies. Despite this extensive impeachment, we reversed Hummel's conviction because of the trial court's error in refusing to permit the cross-examiner to elicit both the number and the nature of Terry's prior felony convictions. We added: "We cannot say that the error was harmless beyond a reasonable doubt because the felony convictions involved crimes of moral turpitude and were peculiarly relevant to the determination of credibility." *Hummel,* 217 Va. at 551, 231 S.E.2d at 217-18.

Duty's prior convictions involved grand larceny, statutory burglary, distribution of drugs, and possession of drugs with intent to distribute. Not only were they crimes of moral turpitude, but their nature was so similar to the crime about which he testified that the jury might have concluded, if the offenses had been named, that he was especially susceptible to the hope of favor if he cooperated or to the fear of severe punishment as an habitual criminal if he did not. Here, as in *Hummel,* the names and numbers of the witness' prior felony convictions were peculiarly relevant to the determination of his credibility. Thus, we cannot say that the error was harmless.

The judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*