455 S.E.2d 749

**James Lamont SIMPSON**

**v.**

**COMMONWEALTH of Virginia.**

**Record No. 2448–92–1.**

Court of Appeals of Virginia,
Norfolk.

April 11, 1995.

Chester L. Smith, Virginia Beach, for appellant.

Margaret Ann B. Walker, Asst. Atty. Gen. (Stephen D. Rosenthal, Atty. Gen., on brief), for appellee.

**176**

Present: BENTON, WILLIS and BRAY, JJ.

WILLIS, Judge.

On appeal from his conviction in a jury trial of two counts of robbery and one count of the use of a firearm in the commission of robbery, James Lamont Simpson contends that the trial court erred in denying his motion to discharge the all-white venire. We find no error and affirm the judgment of the trial court.

## I.

While Simpson's accomplice held a gun to the forehead of the first victim, a fifteen year old boy, Simpson punched that victim in the face and stole his jacket. Later, Simpson stole a speaker from the second victim, a disc jockey who was working a private party, while the accomplice held that victim at gunpoint. Both victims are white. Simpson is black.

At trial, the venire of twenty-three persons was all white. Prior to the swearing of the jury, Simpson moved the trial court to strike the venire and empanel a new one. He argued that the all-white venire violated his constitutional right to a jury of his peers and did not represent a cross-section of the community. The trial court denied Simpson's motion, noting that the venire had been selected randomly by computer "from the DMV registration list as well as the in-state list from the City of Virginia Beach."

The record contains no evidence of the racial makeup of the populace of Virginia Beach. No evidence suggests general under-representation of racial minorities on jury panels in Virginia Beach, any impropriety in the selection and summoning of the venire in this case, or that the venire was not randomly selected and summoned, as provided by law. Simpson based his motion altogether on his assertion that Virginia Beach has black inhabitants and on the fact that the venire was all white.

## II.

Initially, the Commonwealth contends that Simpson did not properly preserve his claim for appeal because the October 6, 1992 volume of the transcript was never stamped or certified as received by the clerk's office. The Commonwealth argues that because this transcript volume contains Simpson's motion and the evidence of the jury's racial makeup, it is indispensable for consideration of this issue on appeal. *See* Rule 5A:8; *Turner v. Commonwealth,* 2 Va.App. 96, 99, 341 S.E.2d 400, 402 (1986).

We reject this contention. Simpson's trial lasted two days. One transcript volume covered each day. The two transcript volumes, labeled "Volume I and Volume II," contain consecutive page numbering, running from Volume I through Volume II. The clerk's certificate is at the end of Volume II. It thus appears that Volume I and Volume II were filed timely as a single document. Because Volume I was filed timely, we shall address this appeal on its merits.

## III.

The requirement that a jury be chosen from a fair cross-section of the community is a fundamental right guaranteed by the Sixth Amendment. This requirement is not met if the jury pool is comprised only of special segments of the populace or if large, distinct groups are excluded. *Taylor v. Louisiana,* 419 U.S. 522, 530, 95 S.Ct. 692, 697–98, 42 L.Ed.2d 690 (1975).

In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). The record in this case makes no such showing.

■ 1. Unquestionably, black persons are a "distinctive" group in the community. Virginia Beach has black citizens, although the record fails to disclose the proportion that they bear to the total population. Black citizens may not be excluded from jury pools and venires. The venire in this case included no black members.

■ 2. Simpson contends that the absence of black persons on the venire demonstrates a lack of fair and reasonable representation of that group. He argued to the trial court, "I think it's fairly obvious, pretty evident, pretty clear, that Virginia Beach has a black population—I would say a heavy black population that would warrant a cross-section of the community having at least two or three members—strike that—one or two members who were black on the jury." He presented no evidence permitting a determination of the proportion of Virginia Beach's population that is black or of the number of black veniremen that would indicate a fair and reasonable representation on the venire. He submitted only his counsel's bare and unquantified assertion and suggestion. He presented no evidence of general under-representation of blacks on venires. Thus, he failed to establish a *prima facie* case of a lack of fair and reasonable representation.

■ 3. The trial court noted that the jury pool was drawn, as provided by law, by random computer selection from the Virginia Beach "in-state list and from the DMV registration list." Simpson did not contest the lawfulness and propriety of this random selection method before the trial court, nor does he contest this method on appeal. The trial court noted that the DMV list was utilized for the purpose of enhancing minority representation in jury pools. It noted that specific venires are drawn blindly and at random from the jury pool. It held that the all-white composition of the venire in this case derived not from design or improper method, but simply from the luck of the draw. Simpson contests neither the accuracy

of this determination nor the propriety of the method employed. He has demonstrated neither deliberate exclusion of black persons nor the use of a jury selection method that is constructed to effect such exclusion or to render it more likely. Thus, he has failed to prove systematic exclusion.

## IV.

Citing *Harmon v. Commonwealth*, 212 Va. 442, 185 S.E.2d 48 (1971), Simpson contends that because the venire included no black members, he was denied his right to a jury drawn from a cross-section of the community. *Harmon* does not support Simpson's contention. In *Harmon*, the Supreme Court reversed a conviction based upon a writ of *venire facias* issued in violation of statutory requirement. The Court said:

> We have repeatedly held that the statutory provisions with respect to empaneling juries are mandatory and not directory.

*Id.* at 444, 185 S.E.2d at 50. *Harmon*, in fact, supports the trial court's ruling. In this case, the jury selection method complied with the statutory requirements, including requirements designed to ensure cross-sectional and racially-neutral representation on the panels drawn.

Our decision in this case is controlled by *Watkins v. Commonwealth*, 238 Va. 341, 385 S.E.2d 50 (1989), *cert. denied*, 494 U.S. 1074, 110 S.Ct. 1797, 108 L.Ed.2d 798 (1990). In *Watkins*, the victim was white, and the defendant was black. Of thirty-five veniremen summoned, only five were black. The defense produced evidence that the population of Danville was nearly thirty percent black. It moved to discharge the venire on the ground that its composition alone evidenced a policy of systematic racial exclusion. The trial court stated that the venire was drawn randomly by computer from a list compiled by jury commissioners, who were instructed to take names from the voter registration list and from such other lists as they found would fairly and adequately represent a cross-section of the community. Denying the motion, the trial court stated that it would be impossible to achieve racial balance

reflecting the exact population ratio without ascertaining the race of each venireman and calling the veniremen to the jury box on the basis of their race.

Affirming the judgment of the trial court, the Supreme Court noted that Watkins had made no showing that the jury selection process was unlawful, no showing of any policy of systematic exclusion, and no showing of a history of under-representation of minorities, but had contended simply that he was constitutionally entitled to a jury that mirrored the racial composition of the community. Rejecting this position, the Court said:

> The Supreme Court has consistently adhered to the view that there is no requirement that a petit jury actually chosen must mirror the racial balance of the community. Further, no litigant is entitled to a jury of any particular composition. All that is required is a fair selection system which does not systematically exclude any distinctive group in the community. In order to make out a prima facie case of systematic exclusion, a litigant must show consistent under-representation of a distinctive group on juries in the community over a period of time. Such under-representation in a particular case is not sufficient.

*Id.* at 347, 385 S.E.2d at 53 (citations omitted). The record in this case makes no such showing.

The judgment of the trial court is affirmed.

*Affirmed.*