COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Lemons[*] and Frank
Argued at Chesapeake, Virginia


TONEY DEAUNDRAE GRIFFIN

MEMORANDUM OPINION[**] BY
v.    Record No. 2819-98-1            JUDGE ROBERT P. FRANK
                                        OCTOBER 10, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

        Theresa B. Berry (Berry, Ermlich & Lomax, on
        brief), for appellant.

        Eugene Murphy, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


    Toney Deaundrae Griffin (appellant) appeals his convictions

for murder, burglary, conspiracy, and use of a firearm.  On

appeal, he contends the trial court erred in:  1) denying his

motion to sever his trial from those of his four codefendants;

2) admitting the statements made by each of the four

codefendants into evidence without further instruction to the

jury; and 3) denying his motion for a mistrial when an

_____

        [*] Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

        [**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

African-American juror was struck for cause because he knew Armard Smith, one of the codefendants.

## I.  BACKGROUND

On July 25, 1997, the home of Tara Harper was burglarized and her friend, William McKleny (victim), was murdered.  In the following days, the police identified appellant, Jerry Norman, Santo Langley, Terrence Woolard, and Armard Smith as suspects.  Each of the men was interrogated by the police and each of them made statements.

Norman made a statement to the police on July 25, 1997.  Over appellant's objection, a transcript of the taped interview was admitted into evidence.  Norman admitted that all of the men discussed breaking into the house to get money.  Norman stated appellant planned to wear a ski mask when they went into the house.  Norman told the police appellant and Smith pried open the door of the house.  When appellant told him there was someone in the house, Norman started to leave.  As Norman was walking to the car, appellant and Langley appeared and said they had to leave.  Once they were in the car, appellant told Norman he shot a man in the house.  Norman said he knew appellant was armed.

Later in the interview, Norman told the police he went into the house with appellant and Smith.  Smith told Norman there was a little girl upstairs, and Norman left with Langley and Woolard.

-

Finally, Norman admitted to the police that he was in the house and Smith was at the back door when appellant shot the victim.

On July 26, 1997, Armard Smith gave his statement to the police.  Over appellant's objection, the transcript of the taped interview was admitted into evidence.  Initially, Smith denied any involvement.  Then, he told the police that he rode with the other men to the house and that he and appellant pried open the door.  He stated that appellant and Norman went into the house. Smith said that he went into the kitchen while the other two went upstairs.  He said that he then left the house and went around to the front door with Langley.  He and Langley rang the doorbell but no one came to the door.  Smith said he heard the gunshot as he was returning to the back of the house.  He said he then ran home.

Later in the interview, Smith said when they arrived at the house, appellant went to the front door.  Then, all five men walked to the back of the house.  He said he, appellant, and Norman tried to pry open the door with appellant's screwdriver. Langley was in the alley.  Woolard left when they got the door open.

Appellant then went upstairs, Norman was at the bottom of the stairs, and Woolard came into the kitchen area.  Appellant then came downstairs and said a baby was upstairs.  Then, all of the men left the house and went into an adjacent alley.  Smith

-

said he and Langley went to the front of the house to ring the doorbell and, as he was returning to the back, he heard the gunshot.

Finally, Smith admitted he did not go to the front door. He said that after he, Langley, Woolard, Norman, and appellant went into the alley, they decided to go back into the house for money. Langley knocked on the door and a woman answered. She went upstairs and returned with the victim. He then said, "They rushed in the house and just, I heard him say something like I'm scared or something and that's when Toney shot him." Smith said Norman was behind appellant and they both had their guns out. Norman's gun was a chrome automatic. Appellant's gun was a black .32 or .38. Smith stated that he did not have a gun. Smith said appellant explained that he shot the victim because the victim was reaching for him.

Appellant made a statement to the police on July 25, 1997. A transcript of the taped interview was admitted into evidence. During the interview, appellant admitted the men planned to break into the house because they thought a man lived there who might have some money. Norman had a semiautomatic gun, but appellant said appellant did not have a gun. Appellant said he had a screwdriver and that Smith helped him break open the door. Then, Norman gave appellant the gun, and appellant went into the house and up the stairs. He said he saw the little girl and

-

went downstairs to tell the others.  He said he then left the house.

On July 27, 1997, appellant made another statement to the police.  A transcript of the taped interview was admitted into evidence.  During this interview, appellant told the police that he did not mean to pull the trigger and that the shooting was an accident.

All five of the men were charged with first-degree murder, conspiracy, burglary, and use of a firearm in the commission of a murder.

## I.  ANALYSIS

Appellant argues the trial court erred in denying his motions to sever his trial from that of his codefendants.

Code § 19.2-262.1 states:

> On motion of the Commonwealth, for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses, to be tried jointly unless such joint trial would constitute prejudice to a defendant.  If the court finds that a joint trial would constitute prejudice to a defendant, the court shall order severance as to that defendant or provide such other relief justice requires.

We have held that a defendant moving for severance must establish that he or she would suffer actual prejudice from being jointly tried.  See Goodson v. Commonwealth, 22 Va. App. 61, 71, 467 S.E.2d 848, 853 (1996) (citation omitted).

-

Prejudice requiring severance occurs when "'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'"  Barnes v. Commonwealth, 22 Va. App. 406, 412, 470 S.E.2d 579, 582 (1996) (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)).

Appellant contends, under Batson v. Kentucky, 476 U.S. 79 (1986), he suffered actual prejudice as a result of the joint trial because the Commonwealth used a peremptory strike to remove an African-American juror because the juror stated she knew Woolard's attorney and because another African-American juror, who stated he knew Smith when Smith was a child, was struck for cause on the fourth day of the trial because the juror said his thoughts of Smith as a child were clouding his judgment.[1]

In Batson, the United States Supreme Court held:

> [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.  To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.  Second, the defendant is entitled to rely on the fact, as to which there can be no

---

[1] Appellant also argues he suffered prejudice as a result of the admission of the statements made by his codefendants.  This issue is addressed below.

dispute, that peremptory challenges
constitute a jury selection practice that
permits "those to discriminate who are of a
mind to discriminate." Finally, the
defendant must show that these facts and any
other relevant circumstances raise an
inference that the prosecutor used that
practice to exclude the veniremen from the
petit jury on account of their race. This
combination of factors in the empaneling of
the petit jury, as in the selection of the
venire, raises the necessary inference of
purposeful discrimination.

Id. at 96 (citations omitted).

To determine "whether the defendant has made the requisite

showing, the trial court should consider all relevant

circumstances." Id.

If the defendant makes a prima facie showing, the burden

shifts to the prosecutor to offer a "neutral explanation for

challenging black jurors." Id. at 97. The prosecutor's reason

is not required to "rise to the level justifying exercise of a

challenge for cause." Id. (citations omitted). However, the

prosecutor cannot state "merely that he challenged jurors of the

defendant's race on the assumption -- or his intuitive judgment

-- that they would be partial to the defendant because of their

shared race." Id. (citation omitted). It is also insufficient

for the prosecutor to deny a discriminatory motive or affirm

"'good faith in making individual selections.'" Id. at 98

(citation omitted).

The Supreme Court of Virginia has held, "A trial court's

determination whether the reason given is race-neutral is

-

entitled to great deference . . . and will not be reversed on appeal unless it is 'clearly erroneous.'"  Atkins v. Commonwealth, 257 Va. 160, 175, 510 S.E.2d 445, 454 (1999) (citations omitted).

In this case, the Commonwealth used a peremptory strike to remove the juror who knew Woolard's attorney.  Assuming, without deciding, appellant made a prima facie showing under Batson, the Commonwealth then offered the explanation that the juror was struck because of her relationship with Woolard's attorney.  We find that the trial court did not abuse its discretion in accepting the Commonwealth's racially-neutral explanation.

The second juror, the man who was removed because he knew Smith as a child, was struck by the court for cause.  Appellant incorrectly argues Batson applies.  Appellant appears to argue that Batson affords him the right to particular jurors.  A defendant has a right to a fair and impartial jury, but does not have the right to a specific juror or a jury composed of particular individuals.  See Reynolds v. State, 517 S.E.2d 51, 52 (Ga. 1999); State v. Cook, 659 A.2d 1313, 1322 (Md. 1995); State v. Monk, 212 S.E.2d 125, 129-30 (N.C. 1975); State v. Williams, 469 S.E.2d 49, 52 (S.C. 1996).  We find no merit in appellant's argument and find no error in the trial court's removal of the juror.

Appellant next contends the trial court erred in admitting into evidence the statements of his codefendants.

-

"In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, 'to be confronted with the witnesses against him.'"  Lilly v. Virginia, 527 U.S. 116, 123 (1999).  "The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, 'means more than being allowed to confront the witness physically.'"  Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (citations omitted).  "Indeed, '"[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."'"  Id. (citations omitted).

"An accomplice's custodial confession that incriminates a codefendant is presumptively unreliable in the context of an alleged Confrontation Clause violation."  Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000) (citing Lilly, 527 U.S. 116).  The admissibility of the confession is determined by whether the confession is

> "supported by a 'showing of particularized guarantees of trustworthiness.'"  The particularized guarantees of trustworthiness necessary to rebut the presumption of unreliability must "be drawn from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief."  Evidence admitted based upon the existence of particularized guarantees of trustworthiness must be so trustworthy that adversarial testing would add little to its reliability.

-

Id. at 383-84, 523 S.E.2d at 539 (citations omitted).  In Bass,

we wrote:

> Circumstances surrounding an accomplice's
> confession that weigh in favor of finding
> reliability include:  (1) lack of knowledge
> on the part of the accomplice that he or she
> already has been implicated in a crime by a
> codefendant, (2) making the confession to
> authorities who were not aware of the
> confessor's role in the crime confessed, and
> (3) the exercise of any contemporaneous
> cross-examination by counsel or its
> equivalent.

Id. at 384, 523 S.E.2d at 539 (citation omitted).

"[W]here codefendants' statements 'are identical in all

material respects,' such evidence may be considered because 'the

likelihood that they are accurate is significantly increased.'"

Id. at 384, 523 S.E.2d at 540 (quoting Lee v. Illinois, 476 U.S.

530, 545 (1986)).  When portions of the

> purportedly "interlocking" statement which
> bear to any significant degree on the
> defendant's participation in the crime are
> not thoroughly substantiated by the
> defendant's own confession, the admission of
> the statement poses too serious a threat to
> the accuracy of the verdict to be
> countenanced by the Sixth Amendment.  In
> other words, when the discrepancies between
> the statements are not insignificant, the
> codefendant's confession may not be
> admitted.

Lee, 476 U.S. at 545.  "Conversely, an accomplice's statement

that does not 'interlock' with the defendant's statement may be

admitted against the defendant if the areas of disagreement are

-

irrelevant or trivial." Bass, 31 Va. App. at 385, 523 S.E.2d at 540 (citing Lee, 476 U.S. at 545).

In this case, Woolard and Langley both testified at trial. Therefore, any violations of the Confrontation Clause that may have resulted from the admission of their statements were remedied when they testified and were subject to cross-examination.

Norman and Smith, however, did not testify and their statements were admitted into evidence. While Norman's confession essentially interlocks with appellant's confession because appellant admitted he planned and participated in the burglary and that he was the triggerman, the Commonwealth failed to prove the inherent reliability required for admissibility of Norman's statement. Norman was in custody and knew he was going to be charged with burglary and murder. Therefore, Norman had an incentive to provide unreliable information to the police.

Smith also was in custody and knew he would be charged with burglary and murder. Furthermore, Smith's statement does not interlock with appellant's confession. Appellant, although admitting that he was the triggerman, insisted that the shooting was an accident and that he did not intend to pull the trigger. Smith, on the other hand, stated appellant told him that he shot the victim because the man was reaching for him. Therefore, the Commonwealth failed to prove the inherent reliability required for admissibility of Smith's statement.

-

It was, therefore, error for the trial court to admit Norman's and Smith's statements.

"Constitutional error . . . is harmless only when the reviewing court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'" Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (citation omitted).

> In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citations omitted).

Norman's statement was merely cumulative of appellant's confession. Norman stated that all the men discussed breaking into the house to get money. Appellant also admitted he and the other men discussed breaking into the house to get money. Norman said appellant pried open the door. Appellant admitted breaking open the door with a screwdriver. Norman stated appellant was armed. Appellant admitted that he had a gun when he went upstairs. Norman said appellant told him that he shot a man in the house. Appellant admitted to being the triggerman. Therefore, we find that the admission of Norman's statement was harmless error.

-

Smith's statement, however, was the only evidence that proved appellant had the requisite intent sufficient to prove first-degree murder. Although appellant admitted shooting the victim, his confession was only sufficient to prove felony murder. Without Smith's statement, the Commonwealth would have been unable to prove appellant committed first-degree murder, and, therefore, the admission of the statement was not harmless beyond a reasonable doubt as to the conviction for first-degree murder. Smith's statement as to appellant's involvement in the conspiracy, burglary, and use of a firearm was sufficiently interlocking with appellant's confession. For those convictions, the admission of Smith's statement was harmless error. We, therefore, reverse and remand appellant's conviction for first-degree murder.

Finally, appellant argues the trial court erred in denying his motion for a mistrial when the trial court removed the juror who knew Smith for cause.

> When the issue arises from a "midtrial"
> challenge to a juror's impartiality, we
> "will reverse the trial court's decision
> only for an abuse of discretion," applying
> the "same standard" of review appropriate to
> appellate consideration of a decision to
> seat a venireperson. Hence, we will not
> overturn "the denial of a motion for a
> mistrial . . . unless there exists a
> manifest probability that [the ruling] was
> prejudicial."

Green v. Commonwealth, 26 Va. App. 394, 401, 494 S.E.2d 888, 891 (1998) (citations omitted).

-

Appellant argues the trial court abused its discretion in failing to grant the mistrial because of the prejudice he suffered by losing a second African-American juror.

> "The Supreme Court has consistently adhered to the view that there is no requirement that a petit jury actually chosen must mirror the racial balance of the community. Further, no litigant is entitled to a jury of any particular composition. All that is required is a fair selection system . . . ."

Simpson v. Commonwealth, 20 Va. App. 174, 180, 455 S.E.2d 749, 752 (1995) (quoting Watkins v. Commonwealth, 238 Va. 341, 347, 385 S.E.2d 50, 53 (1989)).

During voir dire, the juror indicated he knew Smith when Smith was a child but stated he could decide the case fairly. On the fourth day of trial, when the juror indicated he could not decide the case with impartiality, the trial court struck him from the jury for cause. Appellant is not entitled to have members of his own race on his jury, instead he is entitled to have a jury that is selected in a racially-neutral manner. The dismissal of the juror who knew Smith was unrelated to race and, furthermore, did not impact the jury selection process. Therefore, we find no abuse of discretion in the trial court's denial of appellant's motion for a mistrial.

### III.  CONCLUSION

For these reasons, we find no error in the trial court's denial of appellant's motions to sever and appellant's motion for

-

a mistrial.  However, we do find error in the trial court's admission of Smith's statement because it was the only evidence that appellant had the intent to commit first-degree murder.  We, therefore, affirm the convictions for burglary, conspiracy, and use of a firearm.  However, we reverse appellant's conviction for first-degree murder and remand for further proceedings if the Commonwealth be so advised.

<u>Affirmed, in part, and reversed and remanded, in part.</u>