UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Raphael

TODD EMANUEL MANNS

                                                      MEMORANDUM OPINION[*]

v.      Record No. 0135-23-3                           PER CURIAM
                                                   MARCH 26, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

(J. Thomas Love, Jr.; Office of the Public Defender, on briefs), for
appellant.

(Jason S. Miyares, Attorney General; Mason D. Williams, Assistant
Attorney General, on brief), for appellee.


Todd Emanuel Manns appeals his convictions for first-degree murder and use of a

firearm in the commission of murder. He argues that the trial court erred in denying his motion

to set aside the verdict. Finding no error, we affirm the judgment and unanimously hold that oral

argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a).

BACKGROUND[1]

In March 2021, Taniko Belt was living at the Cove apartment complex in Roanoke and

had recently ended a romantic relationship with Manns. Belt's upstairs neighbor was David

Jones. Jones and Manns had "r[u]n into each other several times at the apartment complexes."

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the
prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)
(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

On May 2, 2021, Jones saw Manns in the Cove parking lot around 7:00 p.m., and the two had a "friendly" conversation. Several hours later, Jones was inside his apartment when he heard gunshots. After a pause, he heard several more gunshots. As Jones ran outside to the apartment balcony, he heard a car speeding away but didn't see it. Jones raced downstairs, reaching the ground level about 10 to 13 seconds after the gunshots. There, he saw Manns at the edge of the sidewalk, tucking a "dark, metallic, shiny object" into his rear waistband. Manns was in blue jeans and a white shirt, and he had "a black hat on backwards." When Jones asked Manns what happened, Manns replied: "That bitch done fucked up this time." Manns then walked to his car and "[d]rove off rapidly." Jones got in his car and started to look for Manns. Instead, he came across Belt's car, which had crashed in the median of Peters Creek Road.

Aiden Brown and a friend had driven to the Cove apartment complex that night to buy marijuana. After waiting in the parking lot for 45 minutes, Brown walked through the complex and saw a man sitting on a stairway smoking a cigarette. Brown returned to his car. About 30 minutes later, Brown heard yelling and a man's voice exclaim, "get out of your car and get on the ground." Three or four seconds later, Brown heard a gunshot and, after a pause, several more shots. As Brown's friend drove their vehicle out of the complex, Brown saw a man pointing his gun and shooting at another car leaving the complex. Brown identified the shooter as the man who had been smoking on the stairway. Brown said the shooter wore blue jeans and a hat, although Brown was unsure about his shirt.

Around 11:21 p.m., Roanoke City police officers responded to a report that a car had struck a power pole and a tree in the median of Peters Creek Road. The car, which had sustained heavy damage from the collision, had also been struck by multiple bullets. Belt—the driver and sole occupant—was dead, "slumped over" the steering wheel. A subsequent autopsy determined that she died from blood loss and injuries caused by multiple gunshot wounds.

Law enforcement officers arrested Manns during a scheduled visit with his probation officer five days later. The officers secured and searched Manns's car, seizing two black Taurus handguns: one from the glove compartment and the other from the back pocket of the passenger-side seat.

Manns was indicted for first-degree murder (Code § 18.2-32) and use of a firearm in the commission of murder (Code § 18.2-53.1). At trial, a ballistics expert testified that the handgun seized from the back pocket of the passenger-side seat in Manns's car had fired the bullet removed from Belt's body during the autopsy, as well as a bullet removed from the interior of Belt's car. The same gun also discharged the cartridge casings found at the Cove apartment complex. Other forensic evidence established that Manns could not be eliminated as a contributor of the DNA found under Belt's fingernails.

The Commonwealth also introduced logs of text messages and calls between Manns and Belt during the two weeks before the murder. On the day of the murder, Manns called Belt at 11:08 p.m. When she did not answer, he sent her a text message asking if she was "up" and saying that he "need[ed] to talk" to her. Manns then called Belt three more times between 11:10 and 11:13 p.m. Belt, again, did not answer. Between the calls, Manns sent two more texts asking her to "pick up." Cellular-site data obtained from Manns's service provider showed that Manns's calls to Belt that night used a cell tower near the Cove apartment complex.

The trial court denied Manns's motion to strike, and the jury found him guilty of first-degree murder and use of a firearm in the commission of murder. Manns moved to set aside the verdicts, arguing that the evidence did not exclude the possibility that an unknown assailant killed Belt. The trial court denied that motion. The trial court sentenced Manns to three years' imprisonment for use of a firearm in the commission of murder and imposed a life sentence for first-degree murder. Manns noted a timely appeal.

ANALYSIS

Manns argues that the trial court erred in denying his motion to set aside the verdict. He contends that Jones and Brown were not "credible eyewitnesses" and that the DNA evidence "does not exclude those who are paternally related to [Manns]." He adds that the firearm and cellphone-tower evidence are "of little value" and that the text messages and calls admitted into evidence do not "establish that [Manns] murdered [Belt]."

"A trial court's judgment approving a jury's verdict is entitled to great weight on appeal and will not be disturbed unless it is contrary to law or plainly wrong." *Wagoner v. Commonwealth*, 63 Va. App. 229, 244 (2014) (quoting *Gray v. Commonwealth*, 233 Va. 313, 344 (1987)), *aff'd*, 289 Va. 476, 484 (2015). *See* Code § 8.01-680. Manns's motion to set aside the verdict challenged only the sufficiency of the evidence to prove that he committed the murder. Whether the trial court properly denied that motion is the sole question raised here.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The relevant question is "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable

mind irresistibly to a conclusion." *Pijor v. Commonwealth*, 294 Va. 502, 512-13 (2017) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

There was ample circumstantial evidence from which the jury could find Manns guilty beyond a reasonable doubt of murdering Belt. When Jones encountered Manns at the scene of the shooting seconds after hearing gunshots, Manns was tucking into his waistband a "dark, metallic, shiny object" consistent with the black Taurus handgun used to kill Belt and that was later found in Manns's car. Manns also told Jones, before fleeing the scene, "that bitch done fucked up this time." Manns's flight from the scene of the crime also incriminated him. Indeed, "it is today universally conceded that the fact of an accused's flight . . . and related conduct . . . are admissible as evidence of consciousness of guilt, and thus of guilt itself." *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991) (quoting *United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970)).

Brown also witnessed the shooting of Belt's vehicle and identified the shooter as the individual he saw at the apartment complex wearing jeans and a hat. Brown's description of the shooter aligned with Jones's testimony that Manns was wearing jeans and a hat right after the shooting.

We reject Manns's claim that Jones and Brown's testimony should be disregarded as inherently incredible. Manns describes Jones as a felon and drug user who did not see Manns shoot anyone. But prior "felony convictions" will not render a witness's testimony inherently incredible as a matter of law. *Yates v. Commonwealth*, 4 Va. App. 140, 144 (1987). Manns discounts Brown's testimony because Brown was "emotionally shaken" and did not completely identify the shooter. But "the credibility of witnesses and the weight to be given to their testimony are questions exclusively for the jury." *Green v. Commonwealth*, 78 Va. App. 670, 686 (2023) (quoting *Johnson v. Commonwealth*, 224 Va. 525, 528 (1982)). The testimony

challenged here was "neither 'inherently incredible' nor 'so contrary to human experience as to render it unworthy of belief.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 627 (2019) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)).

What is more, the eyewitness testimony of Jones and Brown was corroborated by the forensic evidence. The handgun seized from Manns's car was the one that fired the bullets that peppered Belt's car and killed her. The cellphone data showed that Manns had been texting and calling Belt shortly before the shooting. And the cellphone-tower data placed Manns's cellphone near the Cove apartment complex at the time of the shooting. Belt also had DNA under her fingernails for which Manns could not be eliminated as the contributor.

CONCLUSION

Taken together, there was ample evidence from which the jury could find beyond a reasonable doubt that Manns intentionally killed Belt with a firearm and committed first-degree murder in doing so.

*Affirmed.*