UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Callins, White and Bernhard

BARRY ALI HAYNIE

MEMORANDUM OPINION* BY
v.      Record No. 0910-24-1      JUDGE KIMBERLEY SLAYTON WHITE
SEPTEMBER 16, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

(Andrew S. Gordon, Senior Assistant Public Defender, on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.

A jury convicted Barry Ali Haynie of possessing a firearm after being convicted of a

felony, in violation of Code § 18.2-308.2. The trial court sentenced Haynie to serve a mandatory

minimum of five years' incarceration. On appeal, Haynie challenges the sufficiency of the

evidence sustaining his conviction. The panel unanimously holds that oral argument is

unnecessary because "the facts and legal arguments are adequately presented in the briefs and

record, and the decisional process would not be significantly aided by oral argument." Code

§ 17.1-403(ii)(c); Rule 5A:27(c). Finding no error, we affirm the trial court's judgment.

BACKGROUND

Ashley Nicole Wallace lived in an apartment with her boyfriend, James Cory Hunt.

Wallace's mother lived in the same apartment complex in the neighboring building. Haynie lived in

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

the same building as Wallace and Hunt. Haynie had been a friend of Wallace's family for years, and Wallace had known him personally for six or seven years.

On January 6, 2023, Hunt picked up Wallace from work one evening around 8:00 p.m. and drove her home. When they arrived at the apartment complex, Haynie was outside the apartment building with a plastic cup in his hand. As they exited their truck, Haynie called out to Wallace, greeting her. Wallace walked over to say hello to Haynie as Hunt continued upstairs to the apartment. Realizing he had forgotten his cigarettes in the truck, Hunt turned back. As Hunt retrieved the cigarettes, Haynie called out to him to say hello. Hunt acknowledged Haynie with a hand gesture. Wallace turned to go upstairs as Haynie approached Hunt. Wallace assumed Haynie was going over to say hello to Hunt and continued walking toward her apartment. Haynie approached Hunt and asked, "You didn't fucking hear me?" Haynie hit Hunt in the face with his drink, leading to a fight.

Wallace ran down the steps and broke up the fight. Haynie then gestured with his hand as if it was a firearm, pointed at Hunt and said, "I got you."[1] Hunt ran into a nearby alley believing that Haynie intended to shoot him. Visibly angry, Haynie went into his apartment. Wallace, in shock, remained by the truck and called her mother, Kathleen Brannen.

While Wallace was on the phone with Brannen, Hunt arrived at Brannen's apartment, panicked and scared. Less than an hour later, Wallace, Hunt, and Brannen reconvened in the kitchen of Wallace and Hunt's apartment. As they stood in the kitchen discussing the incident, bullets flew through the kitchen window, nearly striking Brannen in the head.

Police arrived at the apartment complex and found two nine-millimeter (9mm) bullet casings and a bullet cartridge on the ground below Wallace and Hunt's apartment window. Inside

---

[1] There is some dispute about the exact words Haynie used, whether it was "I got you," or "You're done," or "That's how it's going to be."

the apartment, police found bullet fragments in the kitchen and bullet holes in the kitchen cabinets. Based on what they found, the police believed that four bullets were fired through the window. Police did not locate Haynie that night.

About two weeks later, around 5:40 p.m., Officers Toch, Muhich, and Webster returned to the apartment complex with a warrant for Haynie's arrest. Toch and Muhich went to the front door of Haynie's apartment. Webster went to the rear of the apartment building and hid behind a tree. Muhich knocked on the front door, announced himself, and instructed Haynie to come to the door. No one answered.

On the back porch of Haynie's apartment, Webster saw someone wearing a dark blue shirt with white lettering and dark pants. The individual threw a black plastic bag from the balcony into the grass behind the building and returned to the apartment. The same person came back out on the porch holding another plastic bag. Webster shined a flashlight toward the porch and saw that it was Haynie. Webster announced himself, and Haynie fled into the apartment. Webster radioed the other officers and confirmed he had just seen Haynie.[2]

Muhich remained at the front of the building. Haynie then walked out of the front door of his apartment, dressed in a navy-blue shirt with white lettering and dark pants, and Muhich arrested him. Haynie's roommate, Ronald Stokes, was also in the apartment. Inside the black bag thrown from the porch, police found a 9mm firearm, a box of 9mm ammunition, and a knife. Forensic analysis determined that the firearm was functioning and that it was the same gun that fired the bullet casings found two weeks prior.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The

---

[2] Webster relayed to the other officers, "10-4, that's him."

- 3 -

judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." Code § 18.2-308.2. "A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession." *Durham v. Commonwealth*, ___ Va. ___, ___ (Aug. 1, 2024). "To establish constructive possession, the Commonwealth may prove through the defendant's acts, statements, conduct, or any other relevant facts and circumstances that the defendant was aware of the presence and character of the firearm, and that the firearm was subject to his dominion and control." *Id.* at ___.

Haynie argues the evidence was insufficient to establish his identity as the person who threw the firearm from the back porch of his apartment. But he concedes that if the evidence is sufficient

to establish his identity, it is "otherwise sufficient to convict him." Thus, our inquiry here concerns evidence of identification. Supporting his challenge to identity, Haynie claims that Officer Webster's testimony was inherently incredible and that it lacked sufficient corroboration from other evidence.

"[T]he credibility of witnesses and the weight to be given their testimony are questions exclusively for the jury." *Bailey v. Commonwealth*, 78 Va. App. 650, 666 (2023) (quoting *Johnson v. Commonwealth*, 224 Va. 525, 528 (1982)). "This Court will only disturb a jury's credibility determination when the witness's testimony is inherently incredible." *Id.* (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* at 667 (quoting *Juniper*, 271 Va. at 415).

The identity of the accused as the perpetrator must be proven at trial beyond a reasonable doubt. *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013). Evaluating the reliability of a witness's identification, "this Court looks to the totality of the circumstances." *Id.* Factors to be considered include the witness's opportunity to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description, the level of certainty demonstrated by the witness, and the length of time between the crime and the confrontation. *Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

Webster's attention was focused directly on Haynie for over a minute as he watched Haynie on the back porch. Webster described the clothing of the person he was watching as he radioed Muhich, which was an accurate description of what Haynie was wearing when he was arrested minutes later. Once Webster shined his flashlight on Haynie, he was certain that he was looking at Haynie. Mere minutes lapsed from the time Webster saw Haynie throw the bag, to

positively identifying Haynie, and then recovering the firearm from the bag.  At trial, Webster's testimony was corroborated by his and Muhich's body camera footage.  Webster's testimony was not incredible as a matter of law.  *See Bailey*, 78 Va. App. at 667.  Nor was it insufficient to prove Haynie's identity as the perpetrator.  *See Cuffee*, 61 Va. App. at 364.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*