# Richmond

AUGUSTINE ROBINSON v. COMMONWEALTH OF VIRGINIA.

November 24, 1947.

Record No. 3286.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*P. A. L. Smith, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney General, C. Champion Bowles, Assistant Attorney General,* and *Henry T. Wickham,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Augustine Robinson was indicted under Code, section 4402 (Michie), commonly known as the maiming statute, found guilty by a jury and his punishment fixed at a jail sentence of six months and a fine of $50 and costs. Judgment was entered on the verdict.

Stripped of immaterial details, the evidence, which we think amply supports the verdict, may be stated thus: Clarence Phillips testified that he was visiting in the home of Ella Kinney on the evening of November 14, 1946. While there the accused arrived and they exchanged greetings. Phillips testified that he asked the accused to pay him seventy-five cents which Phillips said the accused owed him. This seems to have made the accused angry and he cursed Phillips and started after him with a potato peeler with which he stabbed Phillips on the side of the neck.

The Commonwealth's testimony disclosed that Phillips did nothing to bring on the trouble and that he tried to get away. This testimony is in conflict with that offered by the accused, but it is the testimony which we must accept on this review.

The foregoing statement is sufficient to justify this court in concluding that there is no merit in the assignment of error which challenges the sufficiency of the evidence to support the verdict.

The contention of counsel for the accused that the evidence of the prosecuting witness was not corroborated and therefore no conviction could rest upon it is not correct. In the first place, the evidence of the prosecuting witness was corroborated, and, in the second place, even if it were not, a conviction in this case could legally rest upon his uncorroborated testimony. There is an exception to the

rule,—for example, in cases of seduction and perjury,—where the testimony of the prosecuting witness must be corroborated, but the present case does not fall within the exception. Nor corroboration was necessary in this case.

The main contention of the accused upon which he relies heavily for a reversal arises out of these facts: After the jury had retired to their room the sheriff responded to a knock on the door of the jury room. The foreman told the sheriff that the jury wanted further instruction as to the punishment that could be fixed in this case. The sheriff then went to the clerk and the latter sent to the jury room a written statement which embodied the punishment fixed by the statute (sec. 4402). The statement was as follows: "He shall be punished by confinement in the penitentiary not less than one nor more than ten years, but if such act was done unlawfully but not maliciously, then he shall be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding $500."

Before the jury were sent to their room the court had instructed them orally but they evidently did not remember the punishment they could fix in the event they found the accused guilty. In these instructions was one in the identical language of the statute, as above set out.

The record is more significant for what it fails to disclose than for what actually appears. It does not disclose that the judge was not upon the bench when the foreman of the jury made the request for further instruction on penalties. It does not disclose that the clerk, in sending the paper to the jury, was not acting upon the direction of the court. It is admitted that it was done in the presence of the accused and without any objection from him or his counsel.

If what took place was in the presence of the court, and we must assume that it was, in the absence of any evidence to the contrary, and in the presence of the accused, which is admitted, and neither the accused nor his counsel made objection at the time, then this contention of the ac-

cused is without merit. If seasonable objection had been made the court no doubt would have corrected the irregularity, but counsel took his chances on a favorable verdict and when he was disappointed he sought to rely on the incident, after the verdict, upon his motion to set the verdict aside. This was too late.

■ It would have been preferable if the sheriff had informed the court of the foreman's request and the court had directed that the jury be brought in open court in the presence of the accused and it had then reiterated its charge on the question of punishment. But we do not think the failure of the court to do this constitutes reversible error in this case.

The paper given the jury contained a correct charge as to the punishment which is fixed in the statute. It was identical with what had already been given them by the court. If it had embodied an incorrect charge the defect might have been serious.

There is no Virginia case directly in point. It is the practice of trial courts throughout the Commonwealth to give additional instruction to the jury after the case has been submitted to them if they or counsel request it, and the court, in its discretion, deems it proper. Often a jury is in disagreement and additional instruction will aid them in reaching a verdict, but, as has been stated already, it is preferable that it be done in open court and in the presence of the accused.

■ Ordinarily all acts of the clerk of the court, done in the presence of the court and under its supervision, must be taken to be done by direction of the court. Such acts are the acts of the court. *Mesmer* v. *Commonwealth*, 26 Gratt. (67 Va.) 976.

In *Mitchell* v. *Commonwealth*, 89 Va. 826, 17 S. E. 480, the prisoner was being tried for rape. After the testimony had been concluded and the case had been argued the jury were directed to retire to consider of their verdict. Just before they did retire the clerk of the court called their at-

tention, as they stood in the jury box, to the charge as to the punishment which had been read to them along with the balance of the charge, and suggested that they take the same to their room with them,—all of which was done in the presence of the court. The charge as to punishment was on a separate piece of paper and it was returned by the jury into court with their verdict which was one of guilty, and the punishment was fixed at death. This court, in passing upon the point, had this to say: "This was but a repetition of so much of the charge, given by the clerk earlier in the proceedings, as respects the punishment prescribed by the statute. It is not pretended that the paper given the jury incorrectly stated the law; and we know no reason why, in this respect, the trial court should not call the attention of the jury to the law prescribing the punishment of the offense for which the prisoner stood indicted and was being tried. The proceeding complained of could, at the utmost, amount to no more than an instruction by the court to the jury." That case is unlike the one at bar in some of the facts but it is the nearest to it that can be found.

In final analysis, this incident was no more than the court, upon request from the jury, reiterating a correct charge as to the statutory penalties applicable to the case in the event the jury found the accused guilty. It was precisely what it already had instructed them orally. It is quite plain that the accused was not prejudiced in any manner by this incident.

The judgment is accordingly affirmed.

*Affirmed.*

BUCHANAN, J., dissenting.

I am unable to agree that the method followed in giving the jury additional instruction on the question of punishment was not reversible error. The accused was charged with malicious wounding under the maiming statute. (Code,

Section 4402). The jury found him guilty, "as charged in the indictment," and fixed his punishment "at six (6) months in jail and a fine of $50.00." The effect of this was to find him not guilty of malicious wounding but guilty of unlawful wounding. *Lee* v. *Commonwealth*, 135 Va. 572, 115 S. E. 671.

Only three witnesses testified as to what happened. One of these was Phillips, who said that he simply asked the accused to pay him the seventy-five cents he owed him, whereupon the accused cursed him and started after him, and while he was trying to get away the accused picked up a potato peeler and stabbed him on the neck; that his wound was treated and bandaged by a doctor and he had to stay in for two days on account of it.

The accused, on the other hand, testified that he told Phillips that he did not owe him anything, but would pay him anyway, and Phillips replied that he would either pay it to him or to an undertaker; that Phillips thereupon attacked the accused with a butcher knife, got him in a corner and the accused grabbed the potato peeler and stabbed Phillips with it. The accused was corroborated by Fannie Kinney, on whom he was calling when Phillips came into the room. She testified that Phillips was trying to cut Robinson with the butcher knife when Robinson stabbed him.

The possible verdicts under the evidence were malicious wounding, unlawful wounding, assault and battery, or not guilty.

The court had already instructed the jury on the punishments for malicious wounding and unlawful wounding. After they had retired to their room they knocked on the door, the sheriff answered, and "was informed that the jury wanted further instruction on the question of punishment. He reported this to the Clerk who took a written statement of the law as contained in Section 4402 of the Code, and gave it to the sheriff who went back into the jury room and gave the jury this paper, which had not been

seen by accused or his counsel, and without securing permission of the Court."

Since the jury had already been instructed on malicious wounding and unlawful wounding, it is probable that the "further instruction on the question of punishment" that they wanted had to do with whether there was any punishment they could administer other than those they had already been instructed on. Their inquiry was answered by receiving what they had already been told, which was equivalent to telling them that the only punishment was for malicious wounding or unlawful wounding. They were not told of the punishment for assault and battery, of which they could have found the defendant guilty. Under the circumstances, it is a fair inference that the point of their inquiry was whether they might find the defendant guilty of an offense carrying less punishment than malicious wounding or unlawful wounding. At least the court should have inquired about that, and should have fully instructed the jury on the range of possible verdicts.

I would reverse the case and not condone the procedure that was followed. The duty of seeing to a correct procedure on so vital a matter should be placed on the court and not on the defendant.