COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Kelsey and Senior Judge Overton
Argued at Salem, Virginia


ROBERT SHAWN STUMP

MEMORANDUM OPINION* BY
v.        Record No. 1112-03-3           JUDGE D. ARTHUR KELSEY
                                         OCTOBER 5, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Keary R. Williams, Judge

Terrence Shea Cook (T. Shea Cook, P.C., on brief), for appellant.

Alice T. Armstrong, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


On appeal, Robert Shawn Stump raises three challenges to his malicious wounding

conviction.  First, Stump claims the evidence is insufficient to support the jury's verdict.

Second, he argues the trial court erred by allowing him to ask the victim about the number of the

victim's prior convictions, but not the nature of these convictions.  Finally, Stump argues the

prosecution's failure to inform him pretrial of the victim's complete criminal record, which

included additional convictions admissible as impeachment evidence, requires a new trial.

We hold (a) sufficient evidence supports the jury's verdict, (b) the trial court erred in

limiting cross-examination of the nature of the victim's prior convictions, but the error should be

deemed harmless under the unique circumstances of this case, and (c) no reasonable probability

exists that, had the additional impeachment evidence been disclosed, it would have changed the

jury's verdict.  For these reasons, we affirm Stump's conviction.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (*en banc*) (citation omitted).

Robert Stump, Kevin Lee Meadows, Jeffrey Dewayne Waynick, James Edward Justus, and the victim, Jerry Glen Baker, were incarcerated together in the Buchanan County Jail during the night of December 14, 2001. Baker woke up at approximately 1:30 a.m. and saw Stump and Justus holding his feet through the bars of his cell. Meadows and Waynick, who had entered Baker's cell, "started beating [him] severely in [his] bed." Meadows and Waynick then dragged Baker from his bed to the floor of the cell. Stump and Justus, entering the cell, then joined the other two in beating Baker.

Gary Chaney, an inmate in an adjacent cell, heard voices say they were "going to jerk somebody out . . . let's get him out by his feet . . . ." He then heard "kind of a thump, you know, couple of thumps, couple of smacks and heard the bars rattle . . . ." Chaney was unable to see what was happening and did not leave his cell until he heard some taunting voices. Upon exiting his cell, Chaney saw Stump, Meadows, Waynick, and Justus "standing around" outside Baker's cell taunting him.

After the beating, Baker made his way to the "jailer's door" and banged on it to get help. Deputy Rod Estep found Baker at the door with a bloody nose, black eye, and bruises and scratches on his body. Deputy Estep took Baker to the jail's administrative office along with Gary Chaney, who had requested to be removed from the jail pod. In the administrative office,

Estep photographed Baker's injuries and then sent him to a hospital for treatment. None of the defendants required medical attention.

A Buchanan County grand jury indicted Stump, Justus, Waynick, and Meadows for malicious wounding in violation of Code § 18.2-51. The four defendants were tried jointly before a jury. In addition to Baker's and Chaney's testimony, the Commonwealth submitted the photographs Deputy Estep took of Baker shortly after the incident. The Commonwealth also presented the testimony of two physicians. Dr. Zaven Jabourian, a board-certified ear, nose and throat doctor, testified that he diagnosed Baker with "mild to moderate" low-frequency hearing loss in his left ear. Dr. Brian Looney, a board-certified optometrist certified in the therapeutic and diagnostic treatment of eye disease, testified that Baker's left eye was still "completely swollen together" when he examined him two days after the incident. He diagnosed Baker with traumatic uveitis, an inflammation of the "front structures of the eye," and commotio retinae, "which is bruising of the retina in the back of the eye." During a later examination, Dr. Looney became concerned that Baker had developed a "traumatic macular hole," or tear in the retina, and referred him to another physician for further care. Such a tear, Dr. Looney stated, could result in "long-standing reduced vision of the eye." Both physicians testified that Baker's hearing and vision injuries were "consistent with a blunt trauma type injury."

All four defendants and one other inmate, David Looney, testified for the defense. Each contended that Baker was the aggressor in a fight with Kevin Meadows and that Stump and Waynick merely helped break up the fight. They said Baker was picking on a smaller inmate and Meadows told him to pick on someone his own size. Baker then attempted to hit Meadows and Meadows fought back. Waynick admitted, however, that he and the other three defendants had been incarcerated together since the incident. David Looney confessed that he and the four defendants had "talked about" the incident among themselves.

Prior to the trial, the Commonwealth provided the defendants with a NCIC criminal background report. It showed that Baker had been charged with rape in 1974, but stated "disposition" for the charge was "not received." At trial, Stump's counsel cross-examined Baker regarding his criminal record. Baker admitted he had been convicted of two felonies. When Stump inquired into the nature of these felonies, the Commonwealth objected. Stump's counsel pointed out that "the law of evidence allows the defense attorney to ask the complaining witness or any other witness that takes the stand not only the number but the nature." The court sustained the objection, stating Baker "already acknowledged there were felonies involving lying, cheating and stealing and the number. That's sufficient."

After trial, Stump discovered that Baker had been convicted of two drug offenses (distribution of Oxycodone and possession of a Schedule I controlled substance), burglary, and petit larceny. Seeking a new trial, Stump moved the court to set aside the verdict. The trial court denied the motion and entered final judgment. Justus, Waynick, and Meadows filed a joint appeal. We affirmed their convictions in Justus v. Commonwealth, No. 1220-03-2, 2004 Va. App. LEXIS 256 (June 1, 2004). Stump now appeals. For the following reasons, we likewise affirm his conviction.

II.

A. SUFFICIENCY OF THE EVIDENCE

When a jury decides the case, Code § 8.01-680 requires that "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). Put another way, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v.

Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). We must instead ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319 (emphasis in original)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Stump contends that the jury should have disbelieved Baker's version of the incident and credited the "overwhelming testimony" from his codefendants declaring Stump's innocence. "The credibility and weight of witnesses' testimony," however, belongs solely to the factfinder. Johnson v. Commonwealth, 40 Va. App. 605, 617, 580 S.E.2d 486, 492 (2003) (quoting Parrish v. Commonwealth, 38 Va. App. 607, 613, 567 S.E.2d 576, 578-79 (2002)). When weighing conflicting testimony, the "touchstone is always credibility; the ultimate measure of testimonial worth is quality and not quantity." Weiler v. United States, 323 U.S. 606, 608 (1945). With rare exceptions, jurors are "free in the exercise of their honest judgment to prefer the testimony of a single witness to that of many." Id. [1] As the trial court correctly advised the jurors at the start of the case: "You should not arbitrarily disregard believable testimony of a witness; however, after you've considered the evidence in the case, then you may accept or discard all or part of the testimony of a witness as you think proper." See Virginia Criminal Benchbook For Judges & Lawyers, App-24 (2003-04).

In this case, Baker testified that he was assaulted by Stump, Justus, Meadows, and Waynick — each acting in concert with one another. Stump and Justus initially held Baker's

---

[1] See generally Martin v. Commonwealth, 217 Va. 847, 849, 234 S.E.2d 62, 63 (1977) (observing no corroboration necessary for attempted murder conviction); Robinson v. Commonwealth, 186 Va. 992, 994, 45 S.E.2d 162, 162-63 (1947) (noting no corroboration is necessary for maiming conviction).

feet while Meadows and Waynick beat him. Meadows and Waynick then pulled Baker out of his bed and onto the floor where all four beat him. Gary Chaney overheard them talking about the planned assault and then heard what sounded like an attack. The photographs Deputy Estep took shortly after the beating showed Baker's left eye swollen completely shut and blood "smeared over his chest and abdominal area."[2] The medical testimony confirmed that Baker suffered hearing and vision injuries from the beating. Ample evidence, therefore, supports the jury's finding that Stump maliciously wounded Baker with the intent to maim, disfigure, disable, or kill him. See Code § 18.2-51; Robertson v. Commonwealth, 31 Va. App. 814, 823, 525 S.E.2d 640, 645 (2000) (noting that malice is a "question for the fact finder" that may be inferred from "a purposeful and cruel act" done "without any or without great provocation").

## B.   NATURE OF PRIOR FELONY CONVICTIONS

Stump next contends the trial court improperly limited his inquiry into the nature of Baker's prior convictions. We agree. Settled Virginia law permits the

> disclosure of the number and nature of felony convictions of a witness for the prosecution, Hummel v. Commonwealth, 217 Va. 548, 550, 231 S.E.2d 216, 217 (1977), cert. denied, 440 U.S. 935 (1979); accord Johnson v. Commonwealth, 224 Va. 525, 528, 298 S.E.2d 99, 101 (1982), and of a witness called by the accused, Dammerau v. Commonwealth, 3 Va. App. 285, 290, 349 S.E.2d 409, 412 (1986), overruled on other grounds, Vecuso v. Commonwealth, 5 Va. App. 59, 69 (1987). But the rule in Harmon that forbids disclosure of the name and nature of prior felony convictions for purposes of impeachment of a defendant in a criminal trial remains intact. Joyner v. Commonwealth, 10 Va. App. 290, 298-99, 392 S.E.2d 822, 826-27 (1990).

---

[2] Stump contends the "jury was prejudiced by the color photos" and argues the "photos were more apt to inflame the jury than to reveal the true nature of the injuries . . . ." Stump, however, did not object to the admission of the photos. Moreover, these photographs, which could be "admitted into evidence . . . to illustrate a witness'[s] testimony, and as an 'independent silent witness' of matters revealed by the photograph," Bailey v. Commonwealth, 259 Va. 723, 738, 529 S.E.2d 570, 579 (2000), were "relevant and probative evidence for the jury to consider" and weigh along with the other evidence, Walker v. Commonwealth, 258 Va. 54, 69, 515 S.E.2d 565, 574 (1999).

Payne v. Carroll, 250 Va. 336, 339, 461 S.E.2d 837, 838 (1995); see also Sadoski v. Commonwealth, 219 Va. 1069, 1071, 254 S.E.2d 100, 101 (1979) ("We have held that the number and nature, but not the details, of the felony convictions of a witness other than the accused may be shown to the triers of fact.").

We concur with the Commonwealth, however, that the error should be deemed harmless under the unique circumstances of this case. Code § 8.01-678 provides: "When it plainly appears from the record and the evidence given at trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial." See generally Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) (observing that essential question is whether "error substantially influenced the jury"). This test parallels the federal standard for non-constitutional error, which focuses on whether the error "had substantial and injurious effect or influence in determining the jury's verdict." United States v. Lane, 474 U.S. 438, 449 (1986) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

We engaged this analysis in Justus v. Commonwealth, No. 1220-03-2, 2004 Va. App. LEXIS 256 (June 1, 2004), a joint appeal brought by Stump's three codefendants. On the harmless error issue, we held:

> The trial court excluded the nature, not the number, of the victim's prior felonies. This case involved a jailhouse fight among incarcerated felons. From *voir dire* on, the jury knew all witnesses to the incident were convicted felons. The defendants extensively cross-examined the victim but primarily relied on impeachment by contradiction to attack his testimony. The nature of the prior felonies was not of particular importance during the defense. The defendants did not request an instruction that the victim's prior convictions could be used when assessing credibility, nor did they argue impeachment by prior felony in their closing arguments.
>
> The nature of the victim's prior felonies was not particularly relevant to determining the credibility of the testimony in this case. The essential issue

- 7 -

for the jury was who started the fight. Six defense witnesses, all felons, presented a story that contradicted the victim. However, the victim's testimony was corroborated in important respects by Gary Chaney, the photographs of the victim's injuries, and the absence of injuries to anyone else.

We conclude the error was harmless because it is unlikely that naming the victim's prior felonies would have added to the impeachment potential of being a felon. The exclusion of the nature of the victim's prior felony convictions did not substantially affect the verdict. "'If, when all is said and done, the conviction is sure that the error [in omitting testimony] did not influence the jury, or had but slight effect, the verdict and the judgment should stand.'" Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)).

Id. at *3. We concur with this reasoning and find it applicable to this case as well.[3] We also add that the trial court, despite erroneously sustaining the Commonwealth's objection, ameliorated the error further by stating in the jury's presence that Baker's prior convictions involved "lying, cheating, and stealing." Because the trial court's error should be deemed harmless, we hold the court did not err in denying Stump's motion for a new trial.[4]

---

[3] Because we find the reasoning of Justus persuasive and adopt it as our own, we do not address the Commonwealth's assertion that under the doctrine of *res judicata*, the four codefendants — tried in a joint trial with shared legal representation — should be deemed in privity with one another for claim or issue preclusion purposes.

[4] As in Justus, we apply the non-constitutional harmless error test. As a general rule, a defendant demonstrates "a constitutional violation 'by showing that he was prohibited from engaging in otherwise appropriate cross-examination *designed to show a prototypical form of bias* on the part of the witness, and thereby "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."'" United States v. Hill, 322 F.3d 301, 304 (4th Cir. 2003) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986), and Davis v. Alaska, 415 U.S. 308, 318 (1974)) (emphasis added). An important distinction exists, however, "between impeachment evidence proving bias and impeachment of general credibility" and this distinction "is important because generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks, but no such limit applies to credibility attacks based upon motive or bias." Quinn v. Haynes, 234 F.3d 837, 845 (4th Cir. 2000) (citation omitted); see also Hill, 322 F.3d at 304. Because the impeachment Stump sought went only to Baker's general credibility and did not involve the use of prototypical forms of motive or bias evidence, the evidentiary error does not require us to employ the harmless error standard reserved for constitutional error.

## C. NONDISCLOSURE OF BRADY IMPEACHMENT EVIDENCE

Finally, Stump claims the trial court erred by not awarding him a new trial based on the prosecution's pretrial failure to disclose Baker's full criminal history. See Brady v. Maryland, 373 U.S. 83, 87 (1963); see also Strickler v. Greene, 527 U.S. 263, 280 (1999); United States v. Bagley, 473 U.S. 667, 676 (1985) (observing that the prosecution's duty to disclose "encompasses impeachment evidence as well as exculpatory evidence"). To obtain a new trial on this ground, however, the defendant must prove that there was a "*reasonable probability* that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." Lovitt v. Warden, 266 Va. 216, 244, 585 S.E.2d 801, 817 (2003) (citations omitted and emphasis added); Cherrix v. Commonwealth, 257 Va. 292, 302, 513 S.E.2d 642, 649 (1999).

We do not believe it reasonably probable that disclosure of the additional information about Baker's criminal past would have changed the jury's verdict. The jury knew from the outset that Baker was a convicted felon. He admitted to two felonies. The judge notified the venire members during *voir dire* that the incident occurred "in the Buchanan County Jailhouse while each of these parties, the defendants and the principal complaining witness were incarcerated . . . ." The prosecutor added that the "complaining victim in this case was incarcerated at the time of the events that you're going to hear about." Stump's attorney likewise explained that all of the witnesses in the case were "convicted felons." Baker's prior felonies do not involve assaultive behavior in any way similar to the facts of this case. And to the extent they implicate moral turpitude for impeachment purposes (like the larceny and burglary convictions), the trial judge said as much when he stated in the jury's presence that Baker's convictions involved "lying, cheating, and stealing." Given the unique facts of this case, we find the defendant has failed to carry his burden of showing a reasonable probability of an acquittal had the additional Brady impeachment information been known prior to trial.

III.

In sum, we find the evidence sufficient to sustain the jury's verdict, the trial court's erroneous evidentiary ruling harmless, and the <u>Brady</u> nondisclosure of insufficient impeachment value to warrant a new trial.

<u>Affirmed.</u>