## Alexandria

LEROY LEE LAMBERT, a/k/a LEON LAMBERT

v.

COMMONWEALTH OF VIRGINIA

No. 0844-86-4

Decided September 12, 1989

68

COUNSEL

Ronald W. Fahy, for appellant.

Richard A. Conway, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**DUFF, J.**—Leroy Lee Lambert was convicted in a bench trial of threatening to burn the home of Karen Hamlette in violation of Code § 18.2-83. Upon being found guilty, he was sentenced to ten

years imprisonment. Two issues are presented on appeal: (1) whether the trial court erred by overruling Lambert's objection to evidence used to impeach his witness, Linda Parks; and (2) whether the evidence was sufficient to support his conviction. Upon our consideration of the record, the briefs filed and arguments presented, we find no reversible error and affirm Lambert's convictions.

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). When so viewed, the evidence showed the following:

On Thanksgiving morning, November 28, 1985, Karen Hamlette went to a Manassas, Virginia laundromat where she encountered Lambert, against whom she had initiated successful prosecutions for trespassing, assault and battery, and destruction of property, stemming from their stormy relationship over the previous two years. Lambert told Hamlette that he was coming to her house for dinner later that day. Having planned dinner for her twelve year old son and several friends, Hamlette advised him that she did not want him to come.

Lambert, nevertheless, arrived at Hamlette's home around 1 p.m. that afternoon, entered the house and sat down. He refused to leave when requested to do so. Hamlette did not call the police, as she "just wanted peace and quiet."

Hamlette's invited guests were Jimmy Humes, Luther Washington and Linda Parks. After dinner, Humes and Washington walked to the latter's house to watch a football game. Lambert, who had been drinking heavily, remained and became very belligerent and abusive. At Hamlette's request, Linda Parks went to Washington's house to tell Jimmy Humes to return.

Upon his return, Humes found the defendant arguing and cursing at Hamlette. According to Humes, the defendant, "told her that he would kill her and he would burn the MF house down."

He also said, "you have got a MF witness thereto prove it," pointing to Humes. According to Hamlette, the defendant also said he would return "in the middle of the night," apply gasoline and burn her house down. When Lambert prevented Hamlette's son, Joseph, from leaving, Joseph climbed out a window and summoned the police, who responded and arrested the defendant.

At trial, Lambert called Linda Parks as a witness on his behalf. Her testimony was in conflict in various respects with that given by the Commonwealth's witnesses. On cross-examination the Commonwealth's attorney asked her if she had not at one time sworn out a warrant for the arrest of Luther Washington for an assault that had never occurred. Parks admitted that she had done so and that she had "turned herself in" to the magistrate. She testified that she was told that she could be charged with perjury, but that no charges were ever brought against her. Lambert's objection to this testimony was overruled, the court holding that it was proper impeachment of the witness' credibility.

This ruling presents for our review the first issue on appeal. Lambert contends that the law permits an attack on a witness' credibility only by proof of bad reputation in the community for truthfulness or by proof of appropriate prior criminal convictions. In short, he argues that unadjudicated perjury, even when admitted by the witness, is not a proper method of impeachment.

■ The Commonwealth concedes that the general rule prohibits impeachment of a witness' character by showing specific acts of untruthfulness. *Clark v. Commonwealth*, 202 Va. 787, 120 S.E.2d 270 (1961); *Bradley v. Commonwealth*, 196 Va. 1126, 86 S.E.2d 828 (1955). It argues, however, that the rule is not without logical exceptions and cites *Clinebell v. Commonwealth*, 235 Va. 319, 368 S.E.2d 263 (1988) where the Supreme Court observed that "the weight of authority recognizes more liberal rules concerning impeachment of complaining witnesses" in cases involving sex offenses. *Id.* at 324, 368 S.E.2d at 265. *Clinebell* held not only that a complaining witness may be cross-examined about prior false accusations, but also that if the witness denies making the accusations, the defendant may submit proof thereof. *Id.* The Commonwealth urges that we adopt a similar exception for the impeachment of witnesses for proof of their unadjudicated, but admitted, prior perjury.

■ Perjury constitutes uniquely probative evidence in the rules governing impeachment of witnesses. When questioning a criminal defendant about prior felony convictions, perjury is the only offense that may be named. This is because of its crucial probative value upon the issue of credibility. *Sadoski v. Commonwealth*, 219 Va. 1069, 254 S.E.2d 100 (1979); *Harmon v. Commonwealth*, 212 Va. 442, 185 S.E.2d 48 (1971). "[I]f a prior conviction is for perjury, that offense may always be named." *McAmis v. Commonwealth*, 225 Va. 419, 422, 304 S.E.2d 2, 4 (1983).

■ The reason underlying the general rule prohibiting evidence of specific acts of untruthfulness "is that the admission of evidence of specific acts, and the rebuttal evidence which would follow, injects collateral issues into the case which would divert the jury's attention from the real issue, the guilt or innocence of the accused." *Wynne v. Commonwealth*, 216 Va. 355, 356-57, 218 S.E.2d 445, 446 (1975). The general rule prevents cross-examination as to collateral facts designed to lay a foundation to contradict the witness later by means of extrinsic evidence. *Clark*, 202 Va. at 789, 120 S.E.2d at 272. In the record before us, however, the evidence of the prior untruthful act by the witness came from the witness herself, whose testimony on that point was considered by the court to be binding on the prosecution. As there was obviously a valid, factual basis for the cross-examination, there is no question concerning the "good faith and fair dealings" on the part of the prosecution. *See Weimer v. Commonwealth*, 5 Va. App. 47, 53, 360 S.E.2d 381, 384 (1987).

■ We believe, and so hold, that a narrowly limited exception to the general rule is warranted by the facts of this case. Such exception would provide the fact finder with highly probative evidence regarding the witness's credibility and at the same time would advance the policy concern of fairness. We hold that a witness's credibility may be attacked on cross-examination by inquiry into prior specific instances of unadjudicated acts of perjury. We further hold, however, that extrinsic proof of the perjury may not be adduced. This view finds support in E. Cleary, *McCormick on Evidence* 340 (3d ed. 1984):

> At present. . . it can be said generally that the majority of courts limit cross examination concerning acts of misconduct as an attack upon character to acts which have some relation

to the credibility of the witness. This is the view adopted by Federal Rule of Evidence 608(b).

\* \* \*

In jurisdictions which permit character impeachment by proof of misconduct for which no conviction has been had, an important curb is the accepted rule that proof is limited to what can be brought out on cross-examination. Thus, if the witness stands his ground and denies the alleged misconduct, the examiner must "take his answer," not that he may not further cross-examine to extract an admission, but in the sense that he may not call other witnesses to prove the discrediting acts.

For these reasons, we find that the trial court correctly allowed the Commonwealth to inquire on cross-examination regarding Parks' prior unadjudicated perjury.

Turning to the second issue presented, Lambert asserts that the statute requires the Commonwealth to prove that he was fifteen years of age or older before he can be convicted. We disagree.

Code § 18.2-83, under which the accused was indicted, provides in relevant part:

Any person (a) who makes and communicates to another by any means any threat to bomb, burn, destroy or in any manner damage any place of assembly, building or other structure . . . shall be guilty of a Class 5 felony; provided, however, that if such person be under fifteen years of age, he shall be guilty of a Class 1 misdemeanor.

We note that the language of this statute is in stark contrast to that employed where the defendant's age is an essential element of the offense itself. For example, Code §§ 18.2-370, 18.2-370.1 and 18.2-371 each begin with the phrase, "Any person eighteen years of age or older. . . ." These statutes clearly make proof of the defendant's age an element of the offense.

■ If the intent of the General Assembly was to make the defendant's age an essential element of the offense defined in Code §

18.2-83, we believe it would have employed the same language used elsewhere in the Code when such a result was intended. The purpose of the age provision in Code § 18.2-83 is to provide for mitigation of punishment when a defendant is of tender years.

Furthermore, in the recent decision of *Jewell v. Commonwealth*, 8 Va. App. 353, 382 S.E.2d 259 (1989), while reversed on other grounds, we held that a defendant's physical appearance was sufficient evidence that he was over eighteen years of age. In the case at bar the trial judge specifically noted that from appearance it was "obvious that the was in excess of fifteen years of age."

For these reasons, the conviction appealed from is

*Affirmed.*

Barrow, J., and Keenan, J., concurred.