UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Senior Judge Annunziata
Argued at Salem, Virginia


GALEN CRAIG SHIFFLETT

                                             MEMORANDUM OPINION[*] BY
v.       Record No. 1675-12-3             JUDGE ROSEMARIE ANNUNZIATA
                                               JANUARY 14, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

W. Andrew Harding (W. Andrew Harding, PLC, on briefs), for
appellant.

Susan M. Harris, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on briefs), for appellee.


Galen Craig Shifflett ("appellant") was convicted in a jury trial of aggravated sexual

battery. On appeal, he asserts the trial court erred in allowing the Commonwealth's attorney to

cross-examine him about the nature of a prior felony conviction. Assuming, without deciding,

that the trial court erred, we conclude any such error was harmless. Accordingly, we affirm

appellant's conviction.

Appellant testified in his own defense, thereby placing his credibility in issue. See

McCarter v. Commonwealth, 38 Va. App. 502, 506, 566 S.E.2d 868, 869-70 (2002). While

"'some prejudice rises' from [the] disclosure of a defendant's felony conviction[,] . . . 'its

probative value as to [credibility] outweighs the prejudicial effect.'" Payne v. Carroll, 250 Va.

336, 339, 461 S.E.2d 837, 838 (1995) (quoting Harmon v. Commonwealth, 212 Va. 442, 446,

185 S.E.2d 48, 51 (1971)). However, "[it] has long been well-settled . . . that the character of a

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

witness for veracity cannot be impeached by proof of a prior conviction of crime, unless the crime be a felony, or one which involved moral turpitude or the character of the witness for veracity." McLane v. Commonwealth, 202 Va. 197, 203, 116 S.E.2d 274, 279-80 (1960). To impeach appellant's credibility, the Commonwealth was entitled to ask whether he had been previously convicted of a felony or a misdemeanor involving moral turpitude, i.e. lying, cheating, or stealing. See Powell v. Commonwealth, 13 Va. App. 17, 23-24, 409 S.E.2d 622, 626 (1991). Proper cross-examination regarding appellant's felony convictions was limited to the number of the convictions and whether any of them were for perjury. Id.; Code § 19.2-269.

Here, the Commonwealth's attorney asked appellant if he had been convicted of "any felonies or any misdemeanors involving moral turpitude," and he answered, "Yes, two." The Commonwealth's attorney followed up, "Okay, two felonies?" Appellant answered, "Two felonies." The prosecutor then asked if one of the felonies involved "lying, cheating, or stealing." Appellant responded, "Yes, sir."

Assuming, without deciding, that the trial court erred by allowing the Commonwealth's attorney to question appellant as to whether any of his felony convictions were for lying, cheating, or stealing, see Payne, 250 Va. at 339, 461 S.E.2d at 839, we conclude such error was harmless based upon the record before us.

Any error in the admission of evidence regarding a defendant's criminal record is "not one of constitutional dimension." See Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991) (*en banc*) (non-constitutional harmless error standard applied to erroneous admission of evidence that defendant had been found "not innocent" of two felonies while a juvenile). Accordingly, we apply a non-constitutional harmless error standard to the facts of this case. A non-constitutional error is harmless if

> "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not

affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

Id. at 1006, 407 S.E.2d at 911 (quoting Code § 8.01-678).

Here, the record reveals that the victim's testimony was detailed and partially corroborated. K.S. testified she was thirteen years old and at home alone when appellant, her uncle, entered the house at approximately 11:30 a.m. on November 21, 2011. She was watching a video when she saw a man walking toward her trailer. Believing the man was her older brother, K.S. unlocked the front door and returned to her video. When appellant entered the trailer, K.S. was not concerned, as he frequently visited, and she had spent time with his family.

Appellant asked K.S. if her brother and her brother's girlfriend were there, and K.S. answered they were at the home of the girlfriend's mother. Appellant then asked K.S. where her cell phone was. She told him she had lost it.

Appellant asked K.S. to turn around and close her eyes, adding she was not to tell anyone about what he was going to do. K.S., who had had no prior problems with her uncle, complied. Appellant stood behind K.S., put his hands beneath her arms, and asked if he could "play with [her] titties." As appellant began to fondle his niece's breasts, K.S. screamed and tried to pull away. Appellant only held her tighter and asked "if it felt good." K.S. told him "no" and asked him to stop touching her. Instead, appellant held on to her for approximately fifteen seconds as K.S. struggled with him. When appellant finally released her, K.S. ran to the corner of the hallway and "curled up in a ball." She screamed at appellant to leave.

Appellant told K.S. he was "sorry, that that's what happens when you're on drugs." He also told her not to tell her dad "because if [she] did then he ha[d] a shotgun and he w[ould] take his life." Appellant noted he had a double-barreled shotgun.

- 3 -

After K.S. told appellant she forgave him and promised she would not tell anyone, he left the trailer. K.S. watched appellant walk down the driveway and enter the basement of his mother's house. She then ran to her room in search of her cell phone. When she could not find it, she ran out the back door so appellant could not see her.

Although she was asthmatic, K.S. ran through a field and over a barbed wire fence before stopping at the home of the closest neighbor. When the neighbor was not home, she continued running toward the auto repair shop where her father worked. K.S. estimated the repair shop was a mile and a half from her trailer.

When K.S. found her father, she told him appellant "tried to rape" her. Her father "got really mad" and told her to get in his truck. He told K.S. they were going to confront appellant at his mother's house and that her father "was going to hurt him." K.S. begged her father not to go because of the threat appellant had made. K.S. called "911" from the truck because she was afraid her father would "overreact." To K.S.'s relief, her father's truck ran out of gas at a post office.

Investigator Doug Miller responded to the post office and spoke with K.S. He noted she was clearly upset and was "crying" and "shaking." After speaking with K.S., Investigator Miller and several patrol units went to Katherine Shifflett's home to speak with appellant. Investigator Miller walked around the house and knocked loudly on the doors and windows, but no one responded. After the officers telephoned Mrs. Shifflett, she came home from work, entered the house, and found appellant sleeping in his bedroom.

The officers transported appellant to the sheriff's department and interviewed him after advising him of his rights. At the time he was taken into custody, appellant was wearing blue jeans, a black t-shirt with the sleeves cut out and a red insignia on the front, and black tennis

shoes with a white Nike stripe.  Appellant denied having left his mother's house that day or visiting K.S.

At trial, K.S. described appellant's clothing at the time of the assault.  She stated he was wearing a brown jacket with a gray hood, a black shirt "with a little bit of red on it," blue jeans, and "black shoes with white on them."

Steven Comer, with whom appellant lived at the time of trial, corroborated K.S.'s testimony.  He stated he was working at the repair shop when K.S. ran there on November 21, 2011.  He noted he had worked with K.S.'s father for over two years, but had never seen K.S. come to the shop.  He described K.S. as crying and "in a panic state."  He corroborated K.S.'s testimony that her father instructed K.S. to get in the truck and that K.S. "begged him not to go." Comer noted that her father's demeanor was "normal" before K.S. arrived, but he became "very angry" after speaking with K.S.

Based on this record, we conclude appellant's testimony that one of his felony convictions involved lying, cheating, or stealing, made in response to the question challenged on appeal, did not affect the jury's verdict, that is, the verdict would have been the same even had the question not been asked and the testimony had not been elicited and admitted.  As the error was harmless, we affirm appellant's conviction.

<u>Affirmed.</u>

- 5 -

Humphreys, J., concurring.

I concur with the judgment of the majority to affirm Shifflett's conviction; however, I respectfully disagree with its analysis. I write separately to clarify two points. First, the majority harmless error analysis is flawed because it fails to address how any prejudice flowing from a potential error is harmless—namely that the limiting instruction received by the jury cures any error. Second, I would hold that there is no error here, harmless or otherwise. In my view, because the Commonwealth could have properly impeached Shifflett under Code § 19.2-269 by asking him directly if he had been convicted of suborning perjury, the trial court did not err by allowing the Commonwealth to ask Shifflett whether one of his prior felony convictions involved lying, cheating, or stealing. The law permits the Commonwealth to inquire into the nature of Shifflett's conviction for suborning perjury to some degree.

I.

The majority assumes, without deciding, that the trial court erred by allowing the Commonwealth to question Shifflett as to whether any of his felony convictions were for lying, cheating, or stealing. However, it concludes that "such error was harmless based upon the record before us." The majority's only justification for any error being harmless is that the record contains substantial evidence of Shifflett's guilt and therefore the jury's verdict would have been the same even had the question never been asked. The majority's analysis is flawed because although it cites Payne v. Carroll, 250 Va. 336, 461 S.E.2d 837 (1995), it failed to apply a Payne analysis to address how, if there was error, any risk of undue prejudice to the accused was cured, rendering any error harmless.

In Payne the Supreme Court found that the trial court did err in allowing improper impeachment evidence of the witness' prior convictions because "the danger of prejudice flowing from the disclosure in issue outweighed its probative value." Id. at 340, 461 S.E.2d at

- 6 -

839 (by disclosing the fact that the civil defendant had been convicted of "a felony involving fraud" the jury could conclude that the defendant was "not only unworthy of belief but also morally undeserving of an award of damages"). The Court concluded that such an improper disclosure "was not something that could amount to harmless error," and further noted that the jury's limiting instruction addressed only the "fact" of conviction and not the "nature," and was therefore not curative. Id. at 340 n.2, 461 S.E.2d at 839 n.2.

Where there is an improper disclosure of a prior felony conviction for impeachment purposes, such error is generally *not* harmless error unless the record is clear that the jury considered it only for the limited purposes of credibility. See id.; see, e.g., Newton v. Commonwealth, 29 Va. App. 433, 448, 412 S.E.2d 846, 853 (1999) (concluding that the Commonwealth's method of impeaching the witness with evidence of prior convictions was improper, but holding the error harmless because the trial court directed the jury to disregard that evidence and the jury is presumed to have followed that curative instruction); cf. Cole v. Commonwealth, 16 Va. App. 113, 116-17, 428 S.E.2d 303, 305-06 (1993) (finding the admission of a prior conviction harmless error because the fact finder was a judge rather than a jury, and judges, unlike juries, are presumed to disregard prejudicial or inadmissible comments and to consider the evidence for the limited purpose of assessing credibility). However, it is well established that if the trial court instructs the jury that they may only consider the defendant's criminal record for the purposes of credibility and not the issue of guilt or affixing punishment, "'they are presumed to follow such instructions.'" Lawson v. Commonwealth, 13 Va. App. 109, 112, 409 S.E.2d 466, 467 (1991) (quoting Lewis v. Commonwealth, 8 Va. App. 574, 580, 383 S.E.2d 736, 740 (1989)); see also Powell v. Commonwealth, 13 Va. App. 17, 27, 409 S.E.2d 622, 628 (1991) ("The trial court gave a cautionary instruction which told the jury that the evidence of other offenses could only be considered for impeachment of the defendant and could

not be considered as evidence of guilt or in assessing punishment. 'Unless the record shows to the contrary, it is presumed that the jury followed an explicit cautionary instruction.'" (internal citations omitted))). Moreover, where the risk of prejudice is too great, "[t]he prejudicial effect cannot be disregarded," and the admission of the evidence is reversible error *irrespective* of a cautionary instruction. Powell, 13 Va. App. at 27, 409 S.E.2d at 628; see, e.g., Lowe v. Cunningham, 268 Va. 268, 274, 601 S.E.2d 628, 631 (2004).

Therefore, notwithstanding that the majority assumes, without deciding, that the trial court erred in allowing an erroneous disclosure of Shifflett's prior felony convictions, in order to be considered harmless error, that error can only be cured by demonstrating that the jury only considered it for evaluating Shifflett's credibility. See, e.g., Payne, 250 Va. at 340, 461 S.E.2d at 839. The majority's conclusion that any "such error was harmless" is faulty because it focuses only on the magnitude of the evidence of Shifflett's guilt, and fails to address how the inquiry into the nature of Shifflett's felony convictions was considered by the jury for the limited purpose of assessing his credibility as a witness, i.e., in light of the cautionary instruction to the jury.[1]

However, in my opinion this Court need not engage in a harmless error analysis at all—because there was no error. For the reasons that follow, I conclude that the trial court did not err in allowing the Commonwealth to ask whether one of Shifflett's prior felony convictions involved lying, cheating, or stealing.

---

[1] In this case, Jury Instruction No. 6 stated:

> You may consider proof of the defendant's prior conviction of a felony or crime of moral turpitude as affecting his credibility, but it does not render him incompetent to testify nor shall you consider it as evidence of his guilt of the offense for which he is on trial (nor shall you consider it in fixing punishment if you do find him guilty).

II.

Before turning to the issue in this case, an examination of the development of the common law governing the use of witnesses' prior convictions for impeachment purposes is instructive in understanding the purpose underlying the limitations on any disclosure of prior convictions by a testifying defendant in a criminal case.

Whenever a witness testifies under oath, that witness puts his or her credibility at issue. Tatum v. Commonwealth, 17 Va. App. 585, 592, 440 S.E.2d 133, 137 (1994). The Commonwealth has traditionally permitted evidence of prior convictions of certain types of crimes based on the theory that "persons who would commit those crimes are probably unworthy of belief." Chrisman v. Commonwealth, 3 Va. App. 89, 91, 348 S.E.2d 399, 400 (1986). Historically, witnesses' prior felony or perjury convictions affected more than merely their credibility under oath—the law deemed them categorically incompetent to testify as a witness in any capacity. See id. Until the Code of 1919 was adopted, "a person convicted of a felony was not a competent witness unless such person had been pardoned or punished." Burford v. Commonwealth, 179 Va. 752, 762, 20 S.E.2d 509, 513 (1942). However, any person convicted of perjury was prohibited from being a witness, "*even though* pardoned or punished." Id. (emphasis added). The common law treated perjury convictions more harshly than any other felony convictions because "the law demands that judicial proceedings shall be fair and free from fraud and that witnesses be encouraged to tell the truth and that they be punished when they do not," thus "[p]erjury strikes at the very heart of the administration of justice." Slayton v. Commonwealth, 185 Va. 371, 383, 38 S.E.2d 485, 491 (1946).

Under the current statute, "[a] person convicted of a felony or perjury shall not be incompetent to testify, but the fact of a conviction may be shown in evidence to affect his credit." Code § 19.2-269. The statute permits the examination of a criminal defendant as to his

- 9 -

prior convictions when he places his credibility at issue by testifying in his own defense. Harmon v. Commonwealth, 212 Va. 442, 446, 185 S.E.2d 48, 51 (1971); see also Code § 19.2-268 ("[T]he accused may be sworn and examined in his own behalf . . . and shall be subject to cross-examination as any other witness."). However, the "sole purpose of such inquiry is to attack the defendant's credibility as a witness," not to prove "evidence of his guilt or innocence of the crime charged." Harmon, 212 Va. at 446, 185 S.E.2d at 51. Consequently, the body of case law construing the scope of permissible impeachment under Code § 19.2-269 narrowly limits the admissibility of the accused's prior convictions to evidence *only* relevant to the defendant's credibility under oath.

Our Supreme Court held in Harmon that when impeaching the credibility of the accused with prior convictions under Code § 19.2-269, "the fact of conviction of a felony may be shown by the Commonwealth, but the name of the felony, other than perjury, and the details thereof may not be shown." Id. The Supreme Court expressed concern that if the jury were to know the name of the felony conviction other than perjury, "it may mean more to them than the mere fact that the defendant is a person of doubtful veracity." Id.; see, e.g., Payne, 250 Va. at 340, 461 S.E.2d at 839 (finding that the danger of prejudice flowing from the disclosure of the nature of the felony conviction "outweighed its probative value"). Later, in Sadoski v. Commonwealth, 219 Va. 1069, 1070, 254 S.E.2d 100, 101 (1979), the Supreme Court extended the rule in Harmon by holding that the Commonwealth could additionally impeach the defendant by showing the number of previous felony convictions, reasoning that "if evidence of one felony conviction is important to a determination of credibility, evidence of more than one felony conviction is even more important." If a defendant testifies untruthfully, the Commonwealth may further impeach the defendant's credibility as a witness with details of the convictions; however, only to the extent necessary to prove that the accused testified falsely. See, e.g., Able

- 10 -

v. Commonwealth, 16 Va. App. 542, 547, 431 S.E.2d 330, 339 (1993) (concluding that it is only the "fact of conviction" or the intentional misrepresentation of the "fact" that is relevant to credibility). The rationale underlying the limitations on impeachment of the accused is to "avoid and minimize" undue prejudice by allowing only evidence relating to the credibility of the defendant as a sworn witness. Powell, 13 Va. App. at 22-23, 409 S.E.2d at 625-26.

Whether a defendant's prior felony conviction is for capital murder, grand larceny, aggravated assault, etc., the rule governing impeachment by prior convictions makes no distinction between types of felonies—with a single exception: felony convictions for perjury. Because a prior conviction for perjury bears directly on a witness' credibility under oath, "[p]erjury constitutes uniquely probative evidence in the rules governing impeachment of witnesses." Lambert v. Commonwealth, 9 Va. App. 67, 71, 383 S.E.2d 752, 754 (1989). Thus, while the Commonwealth may not impeach the accused by proving the name, nature, or details of any other felony conviction, "if a prior conviction is for perjury, that offense may *always* be named." McAmis v. Commonwealth, 225 Va. 419, 422, 304 S.E.2d 2, 4 (1983) (emphasis added). The rule governing impeachment provides this special exception for specifically naming perjury "because of its crucial probative value upon the issue of credibility." Lambert, 9 Va. App. at 71, 383 S.E.2d at 754. Unlike disclosing details of other prior felony convictions to the jury, which carries great risk of undue prejudice to the accused, there is minimal risk that a jury would consider evidence of a prior perjury conviction for any purpose other than determining that "the defendant is a person of doubtful veracity." Harmon, 212 Va. at 446, 185 S.E.2d at 51. Moreover, where the accused's prior felony conviction is for perjury, the disclosure's probative value as to the defendant's credibility outweighs any potentially prejudicial effect. See id.; cf. Lambert, 9 Va. App. at 71, 383 S.E.2d at 754 (creating an exception to the general rule prohibiting evidence of specific acts of untruthfulness that might

- 11 -

improperly divert the jury's attention, that would allow evidence of unadjudicated perjury to impeach the witness because of its highly probative value on the witness' credibility).  Implicit in the General Assembly's deliberate choice to create a special exception for disclosing the nature of perjury convictions—a tradition firmly rooted in the common law—is the concept that evidence of a perjury conviction is principally relevant to the jury's determination of the defendant's credibility under oath.

While Code § 19.2-269 is silent as to the use of evidence of lesser convictions not amounting to felony or perjury, the Supreme Court has interpreted the common law to only allow evidence of convictions for misdemeanors involving moral turpitude to impeach the credibility of the accused.  See Chrisman, 3 Va. App. at 93, 348 S.E.2d at 401 ("There is no statutory provision which permits an advocate to inquire as to whether the witness previously has been convicted of a misdemeanor involving moral turpitude," because "[i]t was not necessary for the General Assembly to statutorily state that those convicted of misdemeanors would not be incompetent as witnesses because the common law did not disqualify misdemeanants."); Parr v. Commonwealth, 198 Va. 721, 724, 96 S.E.2d 160, 163 (1957) ("[P]roof of conviction of a misdemeanor involving moral turpitude is admissible to impeach the credibility of a witness, and . . . conversely, proof of conviction of a misdemeanor not involving moral turpitude is inadmissible for that purpose.").  The rationale behind limiting the type of misdemeanor is that only misdemeanor crimes of moral turpitude are relevant to a witness' veracity.  See Newton, 29 Va. App. at 448, 412 S.E.2d at 853 (finding that distribution of marijuana is not a crime of moral turpitude and therefore is not an appropriate method to impeach the accused's credibility under oath); see also Chrisman, 3 Va. App. at 100, 348 S.E.2d at 405 (finding that indecent exposure is not a crime of moral turpitude because it does not relate to veracity).  "Misdemeanor crimes of moral turpitude are limited to those crimes involving lying, cheating[,] and stealing, including

making a false statement and petit larceny." Newton, 29 Va. App. at 448, 412 S.E.2d at 853.

Impeachment evidence is limited to misdemeanor crimes involving moral turpitude only for the

same reason that the felonies other than perjury cannot be named—the risk of undue prejudice to

the accused that the jury will consider it for determining guilt or innocence rather than

credibility. See Chrisman, 3 Va. App. at 98, 348 S.E.2d at 403.

All the limitations on the admissibility of prior convictions to impeach an accused that

takes the stand as a witness on his own behalf discussed *supra*, are designed to decrease risk of

prejudice to the accused, while cutting straight to the matter at issue: the credibility of the

accused as a sworn witness. With that underlying policy consideration in mind, I now turn to the

case at hand.

### III.

The current scope of impeachment of a testifying criminal defendant with evidence of his

prior convictions is as follows: The Commonwealth is limited to proving (1) the fact that the

defendant has previously been convicted of a felony, but not the name or nature of the felony;

(2) the number of felony convictions; (3) whether any of those felony convictions were perjury;

and (4) whether the defendant has been convicted of a misdemeanor involving moral turpitude

(i.e., lying, cheating, or stealing). Hackney v. Commonwealth, 28 Va. App. 288, 292 n.1, 504

S.E.2d 385, 388 n.1 (1998) (citing Sadoski, 219 Va. at 1070-71, 254 S.E.2d at 101).[2] If the

---

[2] Virginia Rule of Evidence 2.609(A) describes the limitations on the admissibility of evidence of a witness' prior convictions for impeachment purposes when the witness is a party in a civil case or a criminal defendant:

> (i) The fact that a party in a civil case or an accused who testifies has previously been convicted of a felony, or a misdemeanor involving moral turpitude, and the number of such convictions may be elicited during examination of the party or accused.

- 13 -

defendant's response is untruthful, the Commonwealth may impeach the accused with details of the convictions only to the extent necessary to prove that he testified falsely concerning the prior convictions. Id. (citing Powell, 13 Va. App. at 21, 409 S.E.2d at 626-27).

The first issue in this case is whether the Commonwealth could have directly asked Shifflett if he had been convicted of suborning perjury. In other words, does the exception to the general rule regarding prior felony convictions that allows the Commonwealth to impeach a testifying defendant's credibility by specifically naming "perjury" also encompass convictions for suborning perjury in violation of Code § 18.2-436? The second issue, is whether the trial court erred in allowing the Commonwealth to ask if one of Shifflett's felony convictions involved lying, cheating, or stealing.

Shifflett raised the question before the trial court of whether the Commonwealth could impeach him on the stand by asking if he had been convicted of perjury notwithstanding the fact that his felony conviction was actually for suborning perjury in violation of Code § 18.2-436. The Commonwealth argued that there is no distinction between perjury and suborning perjury and that if Shifflett took the stand the Commonwealth would ask him "whether he's been convicted of any felony involving lying, cheating[,] or stealing," and "his answer w[ould] determine whether or not [the Commonwealth] h[as] the ability to present anything else." Shifflett argued that suborning perjury was not "deemed" perjury for the purposes of impeachment under Code § 19.2-269 because they are separate offenses. Moreover, regardless

---

      (ii) If a conviction raised under subdivision (a)(i) is denied, it may [be] proved by extrinsic evidence.

      (iii) In any examination pursuant to this subdivision (a), the name or nature of any crime of which the party or accused was convicted, except for perjury, may not be shown, nor may the details of prior convictions be elicited, unless offered to rebut other evidence concerning prior convictions.

of whether or not the Commonwealth could ask specifically about perjury, Shifflett argued that the law only permitted the Commonwealth to ask a defendant if he has been convicted of a *misdemeanor* involving lying, cheating, or stealing—not if he has been convicted of a *felony* involving lying, cheating, or stealing. Noting Shifflett's objections, the trial judge found that the statute was broad enough to allow Shifflett's impeachment with his conviction. However, the trial court did not allow the Commonwealth to ask Shifflett directly if he had been convicted of perjury. Instead the trial court ruled that it would only allow the Commonwealth "to ask the question [if Shifflett was] ever convicted of lying, cheating or stealing,"[3] and if Shifflett answered affirmatively, then the Commonwealth did not "need to go into specifics" and probe any further whether the conviction was specifically for perjury.

Momentarily setting aside the question of whether the trial court erred in allowing the question that was actually asked at trial about "lying, cheating, or stealing," I believe the law to be clear that the Commonwealth would not have been in error to ask Shifflett if he had any felony convictions for "perjury" or "suborning perjury" since he was convicted of suborning perjury. Both Code § 18.2-434 and Code § 18.2-436 appear in the Code in Title 18.2 under Chapter 10, Article 1 entitled "Perjury." Code § 18.2-436 criminalizes the subornation of perjury—"procur[ing] or induc[ing] another to commit perjury or to give false testimony under oath in violation of any provision of this article." If a person is convicted of suborning perjury in violation of Code § 18.2-436, "he shall be punished as prescribed in Code § 18.2-434." The definition and penalties for perjury are set forth in Code § 18.2-434. Consequently, a conviction of suborning perjury under Code § 18.2-436 carries with it all of the consequences of a

---

[3] Shifflett's objection was two-fold: (1) he objected to the trial court's interpretation of whether the impeachment rule for perjury convictions included convictions for suborning perjury, and (2) he argued that the rule allowing evidence of misdemeanor convictions involving "lying, cheating, or stealing" was separate and distinct from the rule regarding evidence of felony and perjury convictions.

conviction for perjury under Code § 18.2-434. These consequences not only include a Class 5 felony conviction, but also lifelong restrictions on the offender's trustworthiness: "such person thereby shall be adjudged forever incapable of holding any office of honor, profit or trust under the Constitution of Virginia, or of serving as a juror." Code § 18.2-434.

While the Code "treats perjury and subornation of perjury as separate offenses, it prescribes the same punishment for both." Mundy v. Commonwealth, 161 Va. 1049, 1061, 171 S.E. 691, 695 (1933). "From this we gather a legislative declaration that the suborner and the perjurer are alike to be treated, tried and punished for their separate crimes, each to be separately prosecuted for his independent criminal act." Id. Moreover, the intention that the suborner and the perjurer are to be treated and punished alike extends beyond merely felony classifications; it also includes lifetime consequences affecting the offender's integrity in the eyes of the law. Implicit in the legislator's proclamation that the suborner "shall be punished as prescribed in Code § 18.2-434" is the intention that the suborner's credibility shall forever be viewed in the eyes of the law with the same skepticism as the perjurer.

Pursuant to Code § 19.2-269, an accused's convictions in violation of Code § 18.2-434 "may be shown in evidence to affect his credit." Therefore, it follows that the legislature intended that a suborning perjury conviction punishable under Code § 18.2-434 would similarly "affect [the suborner's] credit" under Code § 19.2-269. Because the suborner and the perjurer are equally blameworthy "in the delivery of false testimony," each should be similarly susceptible to impeachment under Code § 19.2-269. The alternative conclusion would be illogical: the law would hold the suborner as blameworthy and untrustworthy as the perjurer, except as it relates to his credibility under oath.

Shifflett urges this Court to make a distinction between an offense that *is perjury* and an offense that *is punishable as perjury*—asserting that because suborning perjury is a separate and

- 16 -

distinct offense, it is therefore not a form a perjury. Shifflett argues that if the legislature intended for suborning perjury to constitute perjury it could have phrased it as such. As an example of when the General Assembly did just that, Shifflett points to the language in Code § 6.2-1121 which states that "[a]ny person knowingly making a false statement in such a report *shall be guilty of perjury*, punishable as provided in [Code] § 18.2-434." (Emphasis added.) <u>See also</u> Code § 18.2-204 ("shall be guilty of perjury . . . and punished as provided by the statutes of this Commonwealth in relation to the crime of perjury"); Code § 19.2-161 ("shall be guilty of perjury, punishable as a Class 5 felony"). What Shifflett fails to note is that all of these provisions separately articulate the punishment or consequences. If the legislature intended that proclaiming that an offender "shall be guilty of perjury," was sufficient to carry with it all the penalties for perjury, it would not have needed to separately enumerate the punishments. Therefore, it is the penalty that reveals what consequences are intended to flow from the conviction. <u>See, e.g.</u>, <u>Pinn v. Commonwealth</u>, 166 Va. 727, 733, 186 S.E. 169, 171 (1936) (finding a conviction admissible for impeachment that is *punishable* as a felony). Shifflett is correct that the law is clear that perjury and subornation of perjury are two separate offenses. However the General Assembly has also created other crimes that "constitute perjury"—separate offenses that require different burdens of proof than Code § 18.2-434. <u>See, e.g.</u>, <u>Scott v. Commonwealth</u>, 14 Va. App. 294, 296-97, 297 n.3, 416 S.E.2d 47, 48-49, 49 n.3 (finding that Code § 18.2-435, which begins "[i]t shall likewise constitute perjury . . . ," is a separate offense that requires a different burden of proof than Code § 18.2-434, however both offenses carry identical penalties (citing <u>Williams v. Commonwealth</u>, 8 Va. App. 336, 381 S.E.2d 361 (1989))). Therefore, Shifflett's argument that a conviction for suborning perjury is not subject to impeachment under Code § 19.2-269 because it is a different offense than perjury is

unpersuasive. The law is clear: both perjury and suborning perjury are "alike to be treated, tried, and punished." Mundy, 161 Va. at 1061, 171 S.E. at 695.

Interpreting the perjury exception to the general rule limiting impeachment with prior felony convictions to include convictions for inducing another to commit perjury is consistent with the underlying policy behind the rule and development of the common law. All the limitations on impeachment by prior convictions of the accused balance the risk of prejudice to the accused with the probative value as to the credibility of the accused as a sworn witness. See Powell, 13 Va. App. at 22-23, 409 S.E.2d at 625-26 ("By disclosing the name and nature of the prior felonies, the risk of prejudice is greatly increased beyond the situation where the Commonwealth proves only the fact and number of prior convictions . . . [t]he jury is more inclined not to limit consideration of such evidence to impeaching the accused's evidence, but also as tending to show that he is probably guilty of this offense, or is a person of bad character."). Because perjury is uniquely probative of a witness' credibility, the common law has historically treated perjury differently from all other crimes with respect to witness credibility. See, e.g., Burford, 179 Va. at 762, 20 S.E.2d at 513. While this Court has found that the risk of prejudice to the accused increases if the name and nature of his felony convictions are disclosed to the jury, conversely, if the accused's prior felony conviction is for perjury, disclosure is permitted because it is the nature of the convictions that have probative value as to the defendant's credibility and therefore, as a matter of law, outweighs any prejudicial effect. See Harmon, 212 Va. at 446, 185 S.E.2d at 51. The same rationale is true for felony convictions for suborning perjury—the crime of inducing another to commit perjury. See Henson v. Commonwealth, 165 Va. 821, 827, 183 S.E. 435, 437 (1936) ("Subornation of perjury, if it exists, tends to draw out the well-springs of justice . . . ."). Like evidence of prior felony convictions for perjury, there is minimal risk that a jury would consider evidence of a prior

felony conviction for suborning perjury for any purpose other than determining that "the defendant is a person of doubtful veracity." Harmon, 212 Va. at 446, 185 S.E.2d at 51. Moreover, this Court has previously interpreted evidentiary exceptions broadly where evidence is highly probative of a witness' credibility. See, e.g., Lambert, 9 Va. App. at 71, 383 S.E.2d at 745 (holding that, despite the general rule prohibiting evidence of specific acts of untruthfulness that might improperly divert the jury's attention, a witness' credibility may be attacked on cross-examination by inquiry into prior specific instances of unadjudicated, but admitted, perjury, because such an "exception would provide the fact finder with highly probative evidence regarding the witness's credibility and at the same time would advance the policy concern of fairness").

In summary, the rule allowing the Commonwealth to impeach a testifying defendant's credibility by specifically naming perjury includes convictions for suborning perjury in violation of Code § 18.2-436. Such an interpretation is consistent with the policy underlying the rules and the common law treatment of perjury for impeachment because both convictions bear equally on the defendant's veracity. Consequently, the Commonwealth could have inquired into Shifflett's prior conviction.

In this case, however, the Commonwealth did not ask Shifflett if he had ever been convicted of "perjury." The Commonwealth first asked Shifflett if he had ever "been convicted of any felonies *or* any misdemeanors involving moral turpitude." Shifflett answered "yes." The Commonwealth then asked how many felony convictions, to which Shifflett responded, "[t]wo felonies." As discussed in length above, the Commonwealth's questions were permissible to this point—the Commonwealth can inquire about felony convictions without naming specific felonies expect for perjury, the number of felony convictions, and misdemeanor convictions involving lying, cheating, or stealing. See Hackney, 28 Va. App. at 292 n.1, 504 S.E.2d at 388

- 19 -

n.1. The questionable error lies with the Commonwealth's next question: "did one of those crimes that you've been convicted of, *the felonies*, involve lying, cheating, or stealing?"

Thus, the issue is whether the trial court erred by allowing the Commonwealth to inquire into the nature of Shifflett's prior felony conviction—whether the conviction involved lying, cheating, or stealing. While the majority assumes, without deciding, that this inquiry was error, in my view, it was within the scope of the current rule. My reasoning is as follows: (1) because, as discussed *supra*, the Commonwealth could have properly asked Shifflett if he had been convicted of perjury, and (2) because the rules contain a special exception that allows the Commonwealth to disclose the nature of felony convictions for perjury or in this case suborning perjury, (3) the trial court therefore did not err by allowing the Commonwealth to ask whether his felony conviction involved lying, cheating, or stealing.

Generally, the Commonwealth cannot ask whether the accused has been convicted of a felony involving moral turpitude or otherwise disclose the nature of the felony conviction. In Payne, the Supreme Court found that the trial court erred by allowing counsel to show the nature of the witness' prior felony conviction by asking whether the party-witness had even been convicted of a "felony involving fraud." Payne, 250 Va. at 338, 340, 461 S.E.2d at 838, 839. However, this case is distinguishable from Payne because it is well settled that perjury convictions, unlike all other felony convictions including fraud, are a unique exception to the general rule prohibiting the disclosure of a defendant's prior felony conviction. See, e.g., id. at 340, 461 S.E.2d at 839 ("Paraphrasing the rule in Harmon defining the permissible scope of impeachment of an accused-witness in a criminal prosecution, we hold that, for purposes of impeachment, the fact of a prior conviction of a felony may be shown against a party-witness in a civil case, but that the name of the felony, other than perjury, and the details thereof may not be shown."); McAmis, 225 Va. at 422, 304 S.E.2d at 4 ("[I]f a prior conviction is for perjury, that

- 20 -

offense may always be named."); Sadoski, 219 Va. at 1071, 254 S.E.2d at 101("[T]he Commonwealth may ask a defendant who testifies in a criminal proceeding the number of times he has been convicted of a felony, but, consistent with our ruling in Harmon, not the names of the felonies, other than perjury, and not the nature or details thereof."); Harmon, 212 Va. at 446, 185 S.E.2d at 51("[T]he fact of conviction of a felony may be shown by the Commonwealth, but the name of the felony, other than perjury, and the details thereof may not be shown."); Able, 16 Va. App. at 546, 431 S.E.2d at 339 ("Unless the prior conviction was for perjury, neither the nature of the felony nor the details of the conviction are admissible."); Powell, 13 Va. App. at 20-21, 409 S.E.2d at 624-25 ("When the Commonwealth attempts to impeach the credibility of the accused by showing prior felony convictions, in order to avoid undue prejudice to the accused, neither the nature of the felony, other than perjury, nor the details of the crime are admissible; only the fact of a conviction can be shown."). Thus, the rule prohibiting the Commonwealth from impeaching a defendant "by proving the nature or details of a prior conviction, *other than perjury*," Hackney, 28 Va. App. at 292 n.1, 504 S.E.2d at 388 n.1 (emphasis added), implies by negative inference that the Commonwealth is allowed to delve into the nature of an accused's prior conviction for perjury.

Because the Commonwealth could properly inquire into the nature of Shifflett's "perjury" conviction, the only issue that remains is whether the question the Commonwealth asked, "did one of those crimes that you've been convicted of, *the felonies*, involve lying, cheating, or stealing," does just that. Perjury, lying under oath, is not only a felony but is also a crime of moral turpitude. Crimes of moral turpitude are crimes that involve lying, cheating, or stealing. See Newton, 29 Va. App. at 448, 412 S.E.2d at 853. Consequently, asking Shifflett whether one of his convictions involved lying, cheating, or stealing, was effectively asking about the nature of Shifflett's perjury conviction.

- 21 -

In sum, because the Commonwealth could have properly asked Shifflett if he had been convicted of perjury, and because the rules contain an exception that allows the Commonwealth to disclose the nature of felony convictions for perjury, the trial court did not err by allowing the Commonwealth to ask whether his felony conviction involved lying, cheating, or stealing.

It is on that basis that I would affirm the judgment of the trial court.